UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

IN RE:

MICHAEL JASON WILLIAMS

CASE NO. 24-60490
CHAPTER 11

DEBTOR

## APPLICATION OF DEBTORS FOR AN ORDER AUTHORIZING EMPLOYMENT OF DELCOTTO LAW GROUP PLLC

Michael J. Williams (the "Debtor") respectfully requests entry of a final order pursuant to 11 U.S.C. §327(a) and §328(a) authorizing him to employ DelCotto Law Group PLLC (the "Firm") as his attorneys, effective as of May 24, 2024 (the "Petition Date"). In support of this Application, the Debtor submits the Declaration of Dean A. Langdon, attorney with the Firm (the "Declaration") attached hereto as <u>Exhibit A</u>. In further support of this Application, the Debtor states as follows:

### JURISDICTION AND VENUE

1.  On May 24, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court under Chapter 11, Subchapter V, of the United States Bankruptcy Code (the "Bankruptcy Code"). The Debtor is operating his business as a debtor and debtor in possession pursuant to §§ 1182 and 1184 of the Bankruptcy Code.

2.  This Court has jurisdiction over this Chapter 11 case under 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

3.  The Debtor is an individual residing in Laurel County, Kentucky. Accordingly, venue for the Debtor's Chapter 11 case is proper in this District under 28 U.S.C. § 1408 and 1409.

4.  A Subchapter V trustee will be appointed in this case in due course.

1

## BACKGROUND

5. Mr. Williams has worked in the cattle industry for all of his adult life, beginning with a company founded by his great-grandfather. He is the majority or sole owner of five entities through which business has been conducted: Williams & Son Livestock, LLC ("Williams & Sons"); J Williams Cattle, LLC ("JW Cattle"); JW Livestock, LLC ("JW Livestock"), Cowboy Capone, LLC ("Capone"), and Laurel Livestock Market, Inc. ("Laurel Livestock," and with the other companies, the "Businesses"). Mr. Williams currently works as an independent cattle broker.

6. Other than Capone, the Business Entities are either no longer operating or winding down their operations. JW Cattle was formed in August 2022 in an effort to assume the business of raising, purchasing and selling cattle which had been conducted by Williams & Son. Williams & Son was initially owned by Mr. Williams and his father. Mr. Williams assumed sole ownership in 2019, but the company was burdened by substantial debts and effectively stopped operating in 2022. JW Livestock engaged in cattle transportation throughout the southeast, northeast and midwestern United States, at one time operating numerous tractors and trailers. However, JW Livestock experienced substantial fluctuations in business due to market factors and was ultimately unable to service the debts incurred to acquire its rolling stock. JW Livestock has permitted its secured lenders to recover their collateral and has ceased operations. Laurel Livestock owned and operated a stockyard operation in London, Kentucky. Capone engages in purchasing and selling cattle for third parties and employs an individual to handle the accounting and banking aspects of the Debtor's cattle brokering. Other than Capone, none of the Business entities are generating any profits.

7. Although Mr. Williams continues to engage in business in the cattle industry, a consequence of the winding down of Mr. Williams' businesses is substantial personal exposure on debts incurred by the businesses.

8. Mr. Williams' has assets with equity and in order to preserve that equity through contribution of his disposable income, or to realize equity for the benefit of creditors by an orderly sale, Mr. Williams elected to seek relief under Subchapter V of Chapter 11 of the Bankruptcy Code.

**RELIEF REQUESTED**

9. The Debtor seeks to employ the Firm as his attorneys in connection with the commencement and prosecution of this Chapter 11 case pursuant to 11 U.S.C. §§ 327 and 328(a). The Debtor requests that this Court approve the employment of the Firm as counsel for the Debtor, under a general retainer, to perform the legal services that will be necessary during this Chapter 11 case.

10. The Debtor has selected the Firm as his attorneys because of the Firm's experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code. The Debtor believes that the Firm is both well-qualified and able to represent him in this Chapter 11 case in an efficient and timely manner.

11. The services of the Firm under a general retainer are necessary to enable the Debtor to faithfully execute his duties as Debtor and Debtor in Possession. Subject to further order of this Court, the Firm will render the following professional services:

(a) To take all necessary action to protect and preserve the Estate of the Debtor, including the prosecution of actions on the Debtor's behalf, the defenses of any actions

commenced against the Debtor, negotiations concerning all litigation in which the Debtor is involved, and objections to claims filed against the Estate;

(b) To prepare on behalf of the Debtor necessary motions, applications, schedules, statements, answers, orders, reports and papers in connection with the administration of their Estate;

(c) To negotiate and prepare on behalf of the Debtor a plan of reorganization and all related documents; and

(d) To perform all other necessary legal services in connection with this Chapter 11 case.

12. The Firm has stated its desire and willingness to act in this case and to render the necessary professional services in accordance with the terms set forth herein, subject to approval of its employment by the Court and approval of acceptable payment arrangements for its allowed fees and expenses in accordance with budgets submitted by the Debtor or approved by this Court.

13. To the best of the Debtors' knowledge, the attorneys of the Firm do not have any connections with the Debtor, his creditors, any parties in interest, or their respective attorneys, except as specifically set forth in the Declaration.

14. It is necessary that the Debtor employ attorneys under a general retainer to render the above-referenced professional services. For providing bankruptcy advice and assistance, the Firm received a retainer of $20,000.00.[1] In addition to the filing fee of $1,738.00, $18,262.00 was used to pay for prepetition fees and expenses, and the Firm is owed the sum of $1,820.08 for pre-petition fees. The Firm holds the balance of $*0* in its escrow account. The Firm intends to seek further Court orders to approve retainer amounts to be paid into its escrow account and held in

---

[1] DLG provided services beyond those connected with the Debtor's bankruptcy prior to the Petition Date, but has disclosed all fees received for the sake of clarity.

4

trust to pay the Firm's fees and expenses as the case progresses to the extent necessary. Pursuant to its engagement agreement, (i) the Firm will assert a valid and perfected security interest/attorneys' lien in any such retainer as security for its postpetition fees and expenses; (ii) the Firm has conditioned the final approval of its engagement upon such future payment arrangements as may be acceptable to it and/or as approved by this Court in further orders; and (iii) the Firm has reserved its right to withdraw from representation of the Debtor unless adequate assurance is made for compensation of its services as allowed by the Court and said payments are being timely received, with disbursements subject to final approval and allowance of fees and expenses by this Court.

15. The Firm intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the local rules and orders of this Court.

16. The Debtor, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the local rules and orders of this Court, propose to pay the Firm its customary hourly rates as set forth in the Declaration, which rates may be increased in the ordinary course of business during the pendency of this case, and submits that such rates are reasonable and customary.

17. Notice of this Application has been given to the Debtor, the United States Trustee, the Debtors' creditors and all other parties who are entitled to receive notice in this case pursuant to the bankruptcy rules.

18. No previous request for the relief requested herein has been made to this Court.

WHEREFORE, the Debtor requests:

1. Entry of a final order approving the Debtors' retention of the Firm effective as of May 24, 2024 pursuant to 11 U.S.C. §§ 327(a) and 328(a);

2. Entry of an order allowing the Firm to hold any retainer and additional fee payments in its escrow account in trust and subject to the Firm's valid and perfected security interest/attorneys lien, pending further orders of this Court; and

3. Granting the Debtor such other relief as is just and proper.

## NOTICE

Please take notice that that a final order granting the relief requested by this Application may be entered without further notice or hearing unless an objection to the Application, properly noticed for hearing, is filed within twenty-one (21) days of the date of service of this pleading.

/s/   *Michael J. Williams*
Michael J. Williams

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/ Dean A. Langdon
Dean A. Langdon, Esq.
KY Bar No. 40104
200 North Upper Street
Lexington, KY 40507
Telephone: (859) 231-5800
Facsimile: (859) 281-1179
dlangdon@dlgfirm.com
COUNSEL FOR DEBTOR AND
DEBTOR IN POSSESSION

## CERTIFICATE OF SERVICE

In addition to the parties who will be served electronically by the Court's ECF System, the undersigned certifies that a true and accurate copy of the foregoing was served by first-class U.S. mail, postage prepaid, or electronic mail on May 31, 2024, on all non-ECF creditors.

/s/ Dean A. Langdon, Esq.
COUNSEL FOR DEBTOR