UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

IN RE:

|  |  |
|---|---|
|  | CASE NO. 24-60490 |
| MICHAEL JASON WILLIAMS | CHAPTER 11 |
|  | SUBCHAPTER V |
| DEBTOR |  |

---

**DEBTOR'S SUBCHAPTER V SMALL BUSINESS PLAN OF REORGANIZATION
UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

---

Respectfully submitted,

DELCOTTO LAW GROUP PLLC


/s/  Dean A. Langdon
KY Bar No. 40104
200 North Upper Street
Lexington, KY 40507
Telephone:  (859) 231-5800
Facsimile:  (859) 281-1179
dlangdon@dlgfirm.com
COUNSEL FOR DEBTOR AND
DEBTOR IN POSSESSION


Dated: August 16, 2024

<u>**DEBTOR'S SUBCHAPTER V SMALL BUSINESS CHAPTER 11**</u>
<u>**PLAN OF REORGANIZATION UNDER CHAPTER 11**</u>
<u>**OF THE UNITED STATES BANKRUPTCY CODE**</u>

**TABLE OF CONTENTS**

| <u>Section</u> | <u>Title</u> | <u>Page</u> |
|---|---|---|
| I. | DEFINITIONS | 3 |
| II. | GENERAL OVERVIEW OF THE PLAN | 3 |
| III. | TREATMENT OF UNCLASSIFIED CLAIMS | 4-5 |
| IV. | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | 5-8 |
| V. | MEANS OF IMPLEMENTATION OF PLAN | 8-9 |
| VI. | IMPAIRED CLASSES | 9 |
| VII. | MANAGEMENT OF REORGANIZED DEBTOR | 9 |
| VIII. | NOTICES | 9 -10 |
| IX. | EXECUTORY CONTRACTS AND LEASES | 10 |
| X. | VOTING | 10-12 |
| XI. | MISCELLANEOUS PLAN PROVISIONS | 12-15 |
| XII. | RETENTION OF JURISDICTION | 15-16 |
| | EXHIBIT A –PLAN DEFINITIONS | 17-20 |
| | EXHIBIT B- BRIEF HISTORY OF DEBTOR | 21 |
| | EXHIBIT C-LIQUIDATION ANALYSIS | |
| | EXHIBIT D- FINANCIAL PROJECTIONS | |
| | EXHIBIT E- SCHEDULE OF UNSECURED CREDITORS | |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

IN RE:

|  |  |
|---|---|
| MICHAEL JASON WILLIAMS | CASE NO. 24-60490<br>CHAPTER 11<br>SUBCHAPTER V |
| DEBTOR |  |

**DEBTOR'S SUBCHAPTER V SMALL BUSINESS PLAN OF REORGANIZATION**

Comes Michael Jason Williams (the "Debtor"), as debtor and debtor in possession in the above-captioned case, and pursuant to Sections 1189 and 1123 of title 11 of the United States Code (the "Bankruptcy Code") and the applicable rules of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby proposes the following Subchapter V Small Business Plan of Reorganization (the "Plan") for the resolution of all Claims against the Debtor.  Debtor is the proponent of this Plan within the meaning of Sections 1189 and 1129 of the Bankruptcy Code.

**ARTICLE I**
**DEFINITIONS**

1.1    <u>Defined Terms</u>:  All capitalized terms used herein and not otherwise defined have the meanings given to them in the Definitions attached hereto as <u>Exhibit A</u> or, if not defined in <u>Exhibit A</u>, then as defined in the Bankruptcy Code, unless the context clearly requires otherwise.

1.2    <u>Rules of Construction</u>:  The rules of construction used in Section 102 of the Bankruptcy Code shall apply to the construction of this Plan.

**ARTICLE II**
**GENERAL OVERVIEW OF THE PLAN**

The Plan provides for the liquidation of certain unproductive assets of the Debtor so that creditors' allowed claims will be paid to the greatest extent possible. The Debtor will also make payments to unsecured creditors from disposable over a period of three years.

THIS GENERAL SUMMARY IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE SPECIFIC PROVISIONS OF THE PLAN AS SET FORTH BELOW WHICH GOVERN.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

3.1    <u>Summary:</u>  Pursuant to 11 U.S.C. § 1123(a)(1), Administrative Expense Claims against the Debtor are not classified for purposes of voting on or receiving Distributions under this Plan.  Holders of such Claims are not entitled to vote on this Plan.  All such Claims are instead treated separately under this Article III and the requirements set forth in 11 U.S.C. § 1129(a)(9).

Unclassified Claims consist of Allowed Administrative and Priority Claims which shall be paid as set forth below.

3.2    <u>Subchapter V Trustee Fees and Payments:</u>  The Subchapter V Trustee ("Trustee") shall be compensated at an hourly rate of $300.  If Debtor obtains a consensual plan, then the Trustee shall file a request for allowance and payment thereof by no later than <u>thirty (30) days after the Confirmation Date</u> or such other date as may be fixed by an order of the Bankruptcy Court.  Pre-confirmation fees for the Trustee shall be paid from asset sale proceeds within thirty (30) days after receipt of same. These preconfirmation fees are not estimated to exceed $5,000. If the Debtor's plan is not consensually confirmed, the Trustee shall continue to be compensated at hourly rate of $300 for post-confirmation services.

3.3    <u>Ordinary Course Administrative Claims:</u>  Allowed Ordinary Course Administrative Claims shall be assumed, paid and performed by Reorganized Debtor in the ordinary course in accordance with the terms of any agreements governing, instruments evidencing, or other documents relating to such transactions.  Ordinary Course Administrative Claims shall include any Administrative Claims of Tax Creditors for post-petition tax obligations which may be accrued but not yet paid, except to the extent that *ad valorem* tax obligations may be assumed by the purchaser of real property.

3.4    <u>Other Administrative Claims and Bar Date:</u>  Except as provided in <u>Sections 3.2, 3.3</u>, <u>3.5</u> and <u>3.6</u>. all other entities seeking payment of an Administrative Claim shall file their respective request for allowance and payment thereof by no later than <u>thirty (30) days after the Confirmation Date</u> or such other date as may be fixed by an order of the Bankruptcy Court.  All holders of Other Administrative Claims shall (i) be paid in full in such amounts as are Allowed by the Bankruptcy Court (A) if Allowed as of the Effective Date, on the Effective Date or as soon thereafter as is practicable, and (B) if not Allowed on the Effective Date, within 30 days of the date the Claim becomes an Allowed Administrative Claim, or (ii) be paid upon such other terms as may be mutually agreed upon between such holder and Reorganized Debtor.

Holders of Other Administrative Expense Claims that do not file and serve a request for allowance and payment by the bar date set forth in this section <u>will be forever barred</u> from asserting such Claims.  A Proof of Claim asserting administrative priority under 11 U.S.C. §§ 507(a)(1), 503(b) or 507(b) or otherwise is not a proper request for allowance and payment of an Administrative Expense Claim in accordance with this section.

3.5    <u>Professional Compensation and Reimbursement Claims:</u>  All Professionals seeking compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date, shall file their respective final applications for allowance of compensation for

services rendered and reimbursement of expenses incurred through the Effective Date by no later than thirty (30) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court.  Any award by the Bankruptcy Court shall be paid in full in such amounts as are Allowed by an order of the Bankruptcy Court on such terms as are agreed between the Professional and Reorganized Debtor. As of July 31, 2024, DelCotto Law Group PLLC's ("DLG") fees are approximately $9,000.00.

     3.6    <u>Administrative Tax Claims</u>.  Allowed Administrative Claims of a Tax Creditor shall be paid in full, plus interest thereon at the rate prescribed by 11 U.S.C. § 511 from its due date until paid, on the later of (a) the Effective Date or (b) the date on which such Allowed Claim becomes due and payable pursuant to the terms thereof.

     3.7    <u>Priority Tax Claims</u>.   Allowed Priority Tax Claims may be paid from net sale proceeds from liquidated assets after payment of administrative claims. To the extent not paid from net sale proceeds, Allowed Priority Tax Claims will be paid through equal deferred monthly cash payments over three (3) years from the Petition Date with interest at the rate prescribed in 11 U.S.C. § 511 until paid in full by payments commencing the month after the Effective Date. The Internal Revenue Service has not filed a proof of Claim as of the filing of this Plan.  However, the Debtor estimates the total priority tax claim of the Internal Revenue Services to be approximately $84,988.10. The Kentucky Department of Revenue has filed a priority tax claim in the amount of $1,706.45, which shall be paid pursuant to this section.

**ARTICLE IV**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

     Debtor reserves the right to object to any Claim. Nothing herein shall constitute an admission as to the validity of any claim or a waiver of any rights of Debtor to object thereto except pursuant to previous orders of the Court.  On the respective dates set forth herein, or as soon as practicable following the date a classified claim becomes an Allowed Claim, whichever is later, the Reorganized Debtor or Trustee, as applicable, shall make the following payments and undertake the considerations hereinafter set forth with respect to such Claims, as follows:

     4.1    <u>Class 1:  Allowed Secured Claim of NexBank:</u>  The Class 1 Claim shall be allowed in the amount of $577,197.13 as set forth in its proof of Claim [Claim No. 21]. The Allowed Secured Claim of NexBank constitutes a valid, perfected, first-priority mortgage against the Debtor's residential real property located at 145 Shelby Brooks Lane, London, Kentucky. The balance of the Class 1 Claim ($577,197.13, subject to reduction by post-petition payments) shall be paid according to the terms set forth in the loan documents filed with the Class 1 Claim. Any portion of the NexBank Cliam attributable to late fees owed prior to the Petition Date, or incurred prior to the Confirmation Date, shall be waived. NexBank shall be entitled to recover its reasonable legal fees incurred in connection with this Bankruptcy Case in an amount not to exceed $2,500.00, to be paid no later than one year after the Effective Date.  The Class 1 creditor shall retain its lien securing the Class 1 Claim until paid pursuant to the terms hereof. The Class 1 Claim is Impaired.

     4.2   <u>Class 2:  Allowed Secured Claim of Farm Credit:</u>  The Class 2 Claim shall be allowed in the amount of $10,430.69 as set forth in its proof of Claim [Claim No. 11], subject to credit for post-petition payments. The Allowed Secured Claim of Farm Credit constitutes a valid, perfected,

first priority lien against the Debtor's Eby Possum Belly Trailer (the "Trailer"). The Debtor shall surrender the Trailer to Farm Credit to be sold in a commercially reasonable manner with net proceeds applied to reduce the principal balance of the loan and accrued interest. Any portion of the Farm Credit Claim attributable to late fees owed prior to the Petition Date, or incurred prior to the Confirmation Date, shall be waived. Farm credit shall be entitled to recover its reasonable legal fees incurred in connection with this Bankruptcy Case in an amount not to exceed $1,000.00, to be paid from the sale proceeds. Any deficiency balance remaining after the sale of Farm Credit's collateral shall be an unsecured Class 7 Claim. Any surplus from the sale shall be paid to the Debtor and distributed under the terms of this Plan.  The Class 2 Claim is Impaired.

4.3    Class 3:  Allowed Secured Claim of Harley Davidson Financial: The Class 3 Claim shall be allowed in the amount of $28,992.04 as set forth in its proof of Claim [Claim No. 17], subject to credit for post-petition payments. The Allowed Secured Claim of Harley Davidson Financial constitutes a valid, perfected, first priority lien against the Debtor's 2023 Harley Davidson FLHRXS Motorcycle (the "Harley"). The Debtor shall surrender the Harley to Harley Davidson Financial to be sold in a commercially reasonable manner with net proceeds applied to reduce the principal balance of the loan and accrued interest.  Any portion of the Harley Davidson Financial Claim attributable to late fees owed prior to the Petition Date, or incurred prior to the Confirmation Date, shall be waived. Harley Davidson Financial shall be entitled to recover its reasonable legal fees incurred in connection with this Bankruptcy Case in an amount not to exceed $1,000.00, to be paid from the sale proceeds. Any deficiency balance after the sale of Harley Davidson Financial's collateral shall be an unsecured Class 7 Claim.  Any surplus from the sale shall be paid to the Debtor and distributed under the terms of this Plan.  The Class 3 Claim is Impaired.

4.4    Class 4: Allowed Secured Claim of Truist Bank: The Class 4 Claim shall be allowed in the amount of $61,046.73 as set forth in its proof of Claim [Claim No. 15], subject to credit for post-petition payments. The Allowed Secured Claim of Truist Bank constitutes a valid, perfected, first priority lien against the Debtor's 2022 Land Rover Defender 110 (the "Defender"). The Debtor does not believe equity exists in the Defender and desires to eliminate the monthly debt service associated with the Defender. The Debtor shall either a) transfer the Defender to his non-debtor spouse (who is jointly liable on the Truist Bank claim); or b) surrender the Defender to Truist Bank to be sold in a commercially reasonable manner with net proceeds applied to reduce the principal balance of the loan. If the Defender is surrendered: x) any portion of The Truist Bank Claim attributable to late fees owed prior to the Petition Date, or incurred prior to the Confirmation Date, shall be waived as to the Debtor; y) Truist Bank shall be entitled to recover its reasonable legal fees incurred in connection with this Bankruptcy Case in an amount not to exceed $1,000.00, to be paid from the sale proceeds; and z) any Allowed Claim for a deficiency shall be treated as a Class 7 Claim.  The Class 4 Claim is Impaired.

4.5    Class 5: Allowed Secured Claim of Volkswagen Credit, Inc.:  The Class 5 Claim shall be an Allowed Secured Claim in the amount of $176,878.74 as set forth in its proof of Claim [Claim no. 22].  Volkswagen Credit, Inc is secured by a valid, perfected, first priority lien against the Debtor's 2023 Audi RS Q8 Quattro (the "Vehicle"). The Class 5 Claim ($176,878.74, subject to reduction by post-petition payments) shall be paid according to the terms set forth in the underlying loan documents, provided that any unpaid installment payments due as of the Confirmation Date shall be added to the end of the existing loan term. The Debtor will retain the

right to surrender the Vehicle to Volkswagen Credit during the life of the Plan in full satisfaction of its secured claim; provided that Volkswagen Credit shall have an unsecured claim for any deficiency balance in the event the Vehicle is surrendered and sold in a commercially reasonable manner. Any unsecured portion of the Volkswagen Credit, Inc claim shall be treated as a Class 7 unsecured claim.  The Class 5 creditor shall retain its lien securing the Class 5 Claim until the secured portion of its claim is paid pursuant to the terms hereof or surrender of the Vehicle.  The Class 5 Claim is Impaired.

4.6    Class 6:  Other Allowed Secured Claims:  Class 6 shall consist of all other Secured Claims, excluding the Class 1 - 5 Secured Claims, and including any unpaid ad valorem taxes on any real property owned by the Debtor which is unpaid as of the Confirmation Date.  In satisfaction of the Allowed Secured Claim of any Class 6 Claimant the Debtor shall, on the Effective Date, or such other date as may be agreed on, at the Debtor's option, either: (i) surrender the collateral to the Claimant to allow it to liquidate said collateral at its discretion; or (ii) pay the amount of such Allowed Secured Claim to the Class 6 Creditor over time during the life of the Plan.  Any Allowed Claim for a deficiency shall be treated as a Class 7 Claim.  The Class 6 Claims are not Impaired. There are no known claims in this Class other than contingent *ad valorem* tax claims.

4.7    Class 7:  Allowed Unsecured Claims:    Each holder of an Allowed Claim in Class 7 shall receive as distribution equal to its pro rata share of a) any Net Sale Proceeds remaining after payment of Allowed Administrative and Allowed Priority claims; and b) 100% of the Reorganized Debtor's disposable income for a period of three (3) years post-Confirmation after satisfaction of any Allowed Administrative and Allowed Priority Tax Claims.  Disposable Income for each year shall be determined and distributions made to the Class 7 Claims on or before December 31st of the following year, beginning in December 2025. The Debtor's projected yearly Disposable Income is set forth on Exhibit D attached hereto. Regardless of the Disposable Income projection, the Debtor will contribute at least $100.00 per month into an account for the sole purpose of distribution to Class 7 Creditors. Creditors will receive distributions based on actual Disposable Income and not projections so distributions may be higher or lower than projected.  Creditors with contingent, unliquidated or disputed claims that do no timely file proofs of claim shall not be eligible to receive a distribution. Creditors who have filed Proofs of Claim are attached hereto as Exhibit E. Class 7 Claims are Impaired.

4.11    Valuation of Secured Claims:  Under 11 U.S.C. § 506, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor, if eligible, elects to have its claim treated as fully secured.   Except as set forth herein, the allowed amount of the creditor's secured claim will be the lesser of value of the creditor's interest in the Debtor's interest in the property as determined under 11 U.S.C. § 506, or the allowed amount of the creditor's claim.  Under the Plan, Debtor proposes to allow all secured creditors to retain their liens in the amount equal to the lesser of the value of the property or the full amount of their claim on the Petition Date without benefit of appraisal except as set forth herein.  If a dispute over valuation occurs with any secured creditor, the Debtor reserves the right to request that the Court determine the value of the creditor's interest in the collateral which secures the creditor's claim.

4.12    Provisions applicable to all Claims

      4.12.1    Satisfaction of Claims:  The payments, distributions and other treatment provided in respect to each Allowed Claim in this Plan shall be in complete satisfaction, discharge and release of such Allowed Claim.  Notwithstanding any other provision of the Plan specifying a date or time for payment or distributions hereunder, no payment or distribution shall be made on any portion of a Claim which is disputed, unliquidated, contingent or subject to objection until such Claim becomes an Allowed Claim, whereupon it shall be paid pursuant to the terms of the Plan.

      **4.12.2    Injunctions.  Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against all Persons from taking any actions to commence or continue any action or proceeding that arose before the Confirmation Date against or affecting the Reorganized Debtor, the Estate,  or the Assets, *and against any guarantor or other person who might be obligated on any Claim along with the Reorganized Debtor*, so long as the Reorganized Debtor is in compliance with the Plan provisions.  That is to say, no party in interest may take any steps to collect or otherwise proceed on its claim against any Person obligated on a Claim, so long as the Reorganized Debtor is performing and in compliance with the Plan as confirmed.  No guarantor or other responsible party is being released, but no party can pursue any such Person so long as the Reorganized Debtor is in Plan compliance.**

      4.12.3    Objections:    Unless otherwise ordered by the Bankruptcy Court, all objections to Claims, including determinations regarding the secured status of any Claim, shall be filed on or before one hundred and eighty (180) days following the Effective Date without prejudice to the extension of such period upon proper application therefore.  Any Claim for which a timely objection is not filed shall be deemed allowed as filed.

# ARTICLE V
# MEANS OF IMPLEMENTATION OF PLAN

      5.1    Means of Implementation and Funding the Plan:  The Plan will be funded by Debtor's orderly liquidation of assets and contribution of his Disposable Income, with a minimum payment of $100.00 per month. The primary asset to be liquidated is real property at 5352 Slate Lick Road, London, Kentucky, which is currently listed for sale. One-half of the net proceeds will be held in escrow for payments under this Plan and the other half will be distributed to the Debtor's non-debtor spouse. The Debtor will substantially reduce his secured debts as the Debtor is surrendering certain vehicles to the secured creditors for commercially reasonable sale.  The reduction of the Debtor's secured debt service and a reduction in living expenses is expected to result in Disposable Income to fund payments to his creditors.  The Reorganized Debtor will fund the Plan payments to Creditors in the ordinary course from post-confirmation Disposable Income and liquidation proceeds. The Debtor has prepared a 3-year financial projection to demonstrate the feasibility of making Plan payments, which is attached as Exhibit D. The Debtor acknowledges additional expense reductions will be required to make the required minimum Plan payments.

      5.2    Vesting of Debtors' Assets:  At the Confirmation Date, all Assets of Debtor and the Estate, including all Avoidance Actions and Causes of Action, will revest in and remain with

Reorganized Debtor, free and clear of all liens, claims interests and encumbrances except for the liens and security interests of those provided for in the Plan. The Reorganized Debtor will remain subject to the jurisdiction of this Court until the case is closed or dismissed.

5.3   <u>Continued Engagement of Professionals</u>:  The Reorganized Debtor shall continue the engagement of DelCotto Law Group PLLC and such other professionals as may be necessary for the purposes of rendering services in connection with implementing the Plan, resolving claims, and performing routine post-confirmation Chapter 11 administration such as final reporting and case closure.

5.4   <u>Monitoring:</u>   Creditors and parties in interest shall have the right to monitor the collection, accounting, treatment and distribution of Plan payments. The Reorganized Debtor shall make available its books and records to any Creditor and parties in interest at any reasonable time, upon reasonable written notice.

**ARTICLE VI**
**IMPAIRED CLASSES**

All Classes are Impaired except Class 6 (Other Allowed Secured Claims).

**ARTICLE VII**
**MANAGEMENT OF REORGANIZED DEBTOR**

7.1   The Debtor will continue to operate following confirmation in the ordinary course as a Reorganized Debtor, subject to the continuing jurisdiction and supervision of this Court until the case is closed.

7.2   <u>Authority for Reorganized Debtor:</u>   Mr. Williams shall have primary responsibility for the accounting for and making of distributions required under the Plan. He shall have full authority to perform any act authorized or required to be performed to implement the Plan and administer the Estate. The Reorganized Debtor shall retain the Estate's and Debtor's capacity to litigate Claims or interests as retained herein and shall have authority to hire professionals to prepare the required tax returns for usual and reasonable fees therefore, payable out of the proceeds of the Reorganized Debtor's income.  Mr. Williams shall not be liable in any manner in the performance of his duties, except for criminal acts, malfeasance or gross recklessness, and no bond shall be required. Mr. Williams shall be authorized and directed to execute, deliver, file, or record such contracts, instruments, releases and other agreements or documents and take such actions on behalf of the Estate as may be necessary or appropriate to effectuate and further evidence the provisions of this Plan. Mr. Williams will receive no compensation for the duration of the Plan other than the payment of his normal living expenses.

**ARTICLE VIII**
**NOTICES**

Except as otherwise specified, all notices and requests shall be given by any written means, including but not limited to electronic e-mail, facsimile, first class mail, express mail or similar

overnight delivery service and hand-delivery letters, and any such notices or requests shall be deemed to have been given when received.  Notices shall be delivered as follows:

<u>To Reorganized Debtor</u>:

Mr. Jason Williams
145 Shelby Brooks Lane
London, Kentucky 40744
ironhorse.jw01@gmail.com

<u>With a copy to</u>:

Dean A. Langdon, Esq.
DelCotto Law Group PLLC
200 North Upper Street
Lexington, KY  40507
Telephone: (859) 231-5800
dlangdon@dlgfirm.com

<u>To Subchapter V Trustee</u>:

Charity S. Bird, Esq.
Kaplan Johnson Abate & Bird, LLP
710 W. Main St., 4th Floor
Louisville , KY 40202
Telephone: (502) 540-8285
cbird@kaplanjohnsonlaw.com

## ARTICLE IX
## EXECUTORY CONTRACTS AND LEASES

9.1     The Debtor reserve the right to apply to this Court at any time prior to Confirmation for authority to assume or reject any other executory contracts and unexpired leases in whole or in part as provided in 11 U.S.C. §§ 365 and 1123.  Any remaining executory contracts and leases for which Debtor has not so moved on or before the Confirmation Date shall be deemed rejected as of said date (the "Rejection Date").

9.2     Any proof of claim which any third party has with respect to the rejection of any unexpired lease or executory contract must be filed no later than thirty (30) days after the later of (i) entry of a Final Order of this Court authorizing such rejection or (ii) the Rejection Date.  Any such Claim for rejection damages shall be treated as a Class 7 Unsecured Claim.

## ARTICLE X
## VOTING

10.1    <u>Voting Procedure</u>:

ACCEPTANCE OR REJECTION OF THE PLAN WILL BE DETERMINED, PURSUANT TO THE BANKRUPTCY CODE, BASED UPON THE BALLOTS OF THE CREDITORS HOLDING ALLOWED CLAIMS THAT ACTUALLY VOTE ON THE PLAN.  THEREFORE, IT IS IMPORTANT THAT CLAIMANTS EXERCISE THEIR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN.

      10.2   <u>Classes Entitled to Vote on the Plan</u>:  All Creditors who have an Impaired Claim are entitled to vote to accept or reject the Plan.

      10.3   <u>General Provisions</u>:  Any Creditor holding a Claim that does not vote will not be counted in the percentage or number requirements for voting.  A Claim that has been objected to is not an Allowed Claim unless and until the Court rules on the objection.  The Court may temporarily set an amount for such an objected claim for purposes of voting on the Plan.  The allowance or disallowance of any Claim for voting purposes does not necessarily mean all or a portion of the claim or interest will be allowed or disallowed for distribution under the Plan.

      10.4   <u>Requirements for Class Acceptance</u>:  A class of Claims accepts the Plan if (i) the Creditors holding Allowed Claims in the Class casting votes in favor of the Plan hold at least two-thirds of the total Allowed Claims voting in that class and (ii) more than one-half in number of Creditors holding Allowed Claims in the Class and casting votes vote in favor of the Plan.

      10.5   <u>Confirmation Pursuant to the Bankruptcy Code, Nonconsensual Confirmation, Discharge, and Payments</u>:  Pursuant to 11 U.S.C. § 1191(a), the court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section are met.  Those requirements include the requirement of 11 U.S.C. § 1129(a)(7) that impaired creditors receive at least as much as they would in a chapter 7 liquidation of the Debtor. In order to demonstrate that impaired creditors will receive more than they would in a chapter 7 case, the Debtor has attached a liquidation analysis as <u>Exhibit C.</u> The Debtor estimates approximately $151,000.00 would be available to creditors after the costs of administration. The Debtor estimates up to $80,000 in net sale proceeds from the sale of 5352 Slate Lick Road. The Debtor is analyzing the potential liquidation of real property in Indiana or the Debtor's residence in order to generate additional net sale proceeds. The Debtor's minimal monthly Plan payments, plus sale proceeds generated during the life of the Plan will result in payments in excess of the liquidation value of his assets being distributed to creditors.

      However, pursuant to 11 U.S.C. § 1191(b), if all of the applicable requirements of section 1129(a), other than paragraphs (8), (10), and (15), are met with respect to a plan, the Court, on request of the Debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan. Cramdown confirmation is possible in subchapter V cases even if 11 U.S.C. § 1129(a)(10) is not satisfied and no impaired class of creditors accepts the plan. The Debtor submits that with respect to any nonaccepting class that the Plan does not discriminate unfairly and is fair and equitable and requests confirmation pursuant to 11 U.S.C. § 1191(b) with respect to any such classes.

      11 U.S.C. § 1191(c) establishes four requirements for a non-consensual plan to be "fair and equitable".  First, for a class of secured claims, 11 U.S.C. § 1191(c)(1) incorporates the fair and equitable standards from 11 U.S.C. § 1129(b)(2)(A).  Section 1129(b)(2)(A) provides three alternatives for what is "fair and equitable" treatment for a secured claim.  First, the plan may provide for the retention by the holder of the claim of the liens securing the claim and the payment to the holder of deferred cash payments totaling at least the allowable amount of the claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in the property securing the liens.  11 U.S.C. § 1129(b)(2)(A)(i).  Second, the plan

may provide for the sale, subject to 11 U.S.C. § 363(k), of the property securing the liens, free and clear of the liens, with the liens to attach to the proceeds of such sale, and the treatment of such liens under subsection (i) or (iii) of section 1129(b)(2)(A).  11 U.S.C. § 1129(b)(2)(A)(ii).  Third, the plan may provide for the realization by the holder of the secured claim of the "indubitable equivalent" of such claim.  11 U.S.C. § 1129(b)(2)(A)(iii).

Second, for other impaired classes, a plan is fair and equitable if, as of the effective date of the plan, it provides that (a) all of the Debtor's projected disposable income for the three to five-year period (as fixed by the court) will be applied to make payments under the plan, or (b) the value of the property to be distributed under the plan during the three to five-year period is not less than the projected disposable income of the debtor.  11 U.S.C. § 1191(c)(2).  Debtor is not required to satisfy the "absolute priority rule" applicable in other chapter 11 cases.

Third, the plan must provide that the debtor will be able to make all plan payments or that there is a reasonable likelihood that the debtor will be able to make the payments.  11 U.S.C. § 1191(c)(3)(A).

Finally, the plan must provide "appropriate remedies" to protect holders of claims or interests if the payments are not made, including liquidation of nonexempt assets.  11 U.S.C. § 1191(c)(3)(B).

Even if the plan is confirmed on a nonconsensual basis pursuant to 11 U.S.C. § 1191(b), the Debtor will collect the plan payments and distribute them to creditors, unless otherwise provided in the plan or confirmation order.  11 U.S.C. § 1194(b).  The trustee will remain in place for the life of the plan, regardless of whether the trustee or the Debtor makes the plan payments.  Upon completion of all plan payments, the Trustee will submit a final report and account of the administration of the estate in accordance with 11 U.S.C.§ 1183(b)(1), which incorporates 11 U.S.C. § 704(a)(9).

If the plan is consensually confirmed, unless otherwise provided in the plan or ordered by the court, the trustee's duties terminate with substantial consummation of the plan.  11 U.S.C. § 1183(c)(1).  Not later than 14 days after a Debtor's consensual plan is substantially consummated, the debtor shall file a notice of substantial consummation and serve this notice on the trustee, the United States Trustee, and all parties in interest.  11 U.S.C. § 1183(c)(2).

10.6    <u>Ballots and Voting</u>:  Creditors holding Allowed Claims entitled to vote on the Plan have been sent a Ballot, together with instructions for voting, with this Plan.  Creditors should read the Ballot carefully and follow the instructions contained therein.  In voting to accept or reject the Plan, you must use only the Ballot sent to you with this Plan.  Creditors entitled to vote must complete, sign, and return their ballots by delivering or transmitting their ballots to the Attorneys for Debtor, DelCotto Law Group PLLC, 200 North Upper Street, Lexington, Kentucky 40507, telephone (859) 231-5800, fax (859) 281-1179, Attention: Dean A. Langdon, email: dlangdon@dlgfirm.com, on or before 5:00 p.m. EST on a deadline set by the Court. The Debtor will present the results of the voting to the Bankruptcy Court prior to the Confirmation Hearing.

## ARTICLE XI
## MISCELLANEOUS PLAN PROVISIONS

11.1    <u>Causes of Action</u>:   The Plan provides that the Reorganized Debtor shall retain all rights of actions against others.  If no action is taken to pursue a Cause of Action within (2) two years of the Effective Date, it shall be deemed abandoned.  The Debtor does not believe there are any unsecured creditors that received transfers within 90 days of Petition Date for potential preference liability. If the Reorganized Debtor discovers any potentially avoidable transfers, he will evaluate any potential defenses and determine if attempts to recover any such preferential transfer would be economically beneficial to the Debtor's creditors. Nor does the Debtor believe he made any payments made to insiders within (1) one year of the Petition Date.

11.2    <u>Effectuating Documents; Exemption from Certain Transfer Taxes</u>:    The Reorganized Debtor is hereby authorized to execute, deliver, file or record such documents, contracts, releases and other agreements, and take all such further action as may be necessary, to effectuate and further evidence the terms of this Plan.  Pursuant to 11 U.S.C. § 1146(c), the delivery of any instrument or transfer under, and furtherance of, or in connection with, the Plan, including but not limited to deeds, bills of sale, assignments, or other instruments of transfer, shall not be subject to any stamp tax, real estate tax, or similar transfer tax.

11.3    <u>Closing of the Bankruptcy Case</u>:  After substantial consummation of a consensual plan, as provided in 11 U.S.C. § 1101(2), and termination of the Trustee's services pursuant to 11 U.S.C. § 1183(c)(1), the Reorganized Debtor may proceed to seek entry of a final decree closing the case pursuant 11 U.S.C. § 350(a) and Fed R. Bankr. P. 3022, upon a showing that the estate has been fully administered, the court has discharged the trustee, and there are no remaining matters for which the court must continue to exercise jurisdiction.  Provided, however, that any closure shall be subject to the following conditions authorized by 11 U.S.C. § 349(b): (a) said closing shall not alter, amend, revoke or supersede the terms of the confirmed Plan; (b) all rights of Debtor, Creditors or any other Person treated under the Plan shall remain unaffected by said closure; (c) the terms of the confirmed Plan shall be binding on all Persons; (d) all orders previously entered by the Court, unless altered by the Plan, shall remain in full force and effect; and (e) the Court shall retain all jurisdiction set forth herein.  If the confirmed plan is non-consensual and the trustee is responsible for making the Plan payments to creditors, the case ordinarily will remain open after substantial consummation until all payments have been made by the Trustee, the Trustee has filed a final report and account, and there are no remaining matters for which the court must continue to exercise jurisdiction.  See 11 U.S.C. § 350(a).

11.4    <u>Further Authorization</u>:  The Reorganized Debtor and/or Trustee as applicable shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

11.5    <u>Modification of Plan</u>:    The Debtor reserves the right to modify this Plan in accordance with 11 U.S.C. § 1193 at any time prior to the Confirmation Date.  Subject thereto, Debtor may modify this Plan, before or after the Confirmation Date but prior to substantial consummation of this Plan.  In the event of any modification of this Plan on or before the Confirmation Date, any votes to accept or reject the Plan shall be deemed to be votes to accept or

13

reject as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of the parties which have cast said votes.  Further, the Debtor reserves the right to revoke or withdraw this Plan any time before entry of the Confirmation Order.  If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, or if the Confirmation or Effective Date does not occur, this Plan shall be deemed null and void. In such event, nothing in this Plan relating to this Plan shall be deemed to constitute an admission of validity, waiver or release of any Claims by or against the Debtor or in any proceeding involving the Debtor.

11.6    Condition of Confirmation:    The following are conditions precedent to confirmation of this Plan:

11.6.1   Form of Confirmation Order.  The Confirmation Order shall be in a form and substance satisfactory to the Debtor.

11.7    Conditions to Occurrence of Effective Date:  The following are conditions to the occurrence of the Effective Date:

11.7.1   Entry of Confirmation Order.  The Confirmation Order shall have been entered by the Court and shall not be subject to any stay and shall otherwise be in full force and effect.

11.7.2   Final Order.  The Confirmation Order shall have become a Final Order.

11.8    Consummation of the Plan:    Substantial consummation shall occur when the first payments on Allowed Claims are made or reserved for.

11.9    Minimum Distributions:    If a distribution to be made to a Creditor holding an Allowed Claim would be $50.00 or less in the aggregate, notwithstanding any contrary provision of this Plan, no such distribution will be made to such holder unless a request therefore is made in writing to Debtor.

11.10   Late Claims:    Disallowed Claims shall be expunged from the Claims register without need for any further notice, motion or order.

11.11   Copies of Confirmation Order Sufficient Evidence of Waivers, Releases, Etc.: Upon Confirmation of this Plan, a true and correct copy of the Confirmation Order shall be legally sufficient evidence of the terms, provisions and effects of this Plan for all purposes in any subsequent judicial proceeding or official record.

11.12   Binding Effect:    The rights and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors, heirs and assigns of such Person.

11.13   Unclaimed Funds:    All unclaimed payments or distributions made to any Creditor under the Plan, including but not limited to, unnegotiated checks or drafts, shall revert, after sixty (60) days, to Reorganized Debtor to be redistributed pursuant to the Plan, and shall be

forfeited as to the affected Creditors.  Any Creditor whose payment is forfeited under this provision will thereafter be treated as having a Disallowed Claim.

11.14    <u>Notice of Default</u>:  In the event of any alleged default under the Plan, any Claimant or party in interest must give a written default notice to the Reorganized Debtor (or Trustee if applicable) with copies to counsel of record for Debtor, specifying the nature of the default.  The Reorganized Debtor shall have thirty (30) days to cure such default from the first date either Reorganized Debtor or his counsel receives the default notice. If such default has not been cured within the 30-day cure period, then the Claimant shall have the right to immediately enforce its liens, mortgages, and security interests in compliance with Kentucky or other applicable law, including without limitation, foreclosure, repossession, and the sale of the collateral securing its claim. Any such action shall not be deemed in any way a violation of the Plan or Plan injunction and shall be permitted without need for further court order.  **The Injunction in Section 4.12.2 shall expire as to the creditor(s) alleging a default if any noticed default remains uncured after the 30-day cure period.**

11.15    <u>Set Off and Recoupment Rights</u>:  Except as specifically provided in the Plan, no Person shall retain any contractual or statutory right to set off or recoup any asset in which Reorganized Debtor has an interest in satisfaction of that Claimant's prepetition Claim.  Any right to set off or recoup a claim against an asset of Debtor that is not specifically retained is waived and forever barred.

11.16    <u>No Admissions or Waivers</u>:  Neither the filing of this Plan (as either may be modified or amended) nor the taking of any action by Debtor, with respect to the Plan is, or shall be deemed, an admission or waiver of any of Debtor's rights or defenses.  In the event Confirmation does not occur or the Plan does not become effective, no statement contained herein may be used or relied on in any manner as against Debtor in any suit, action, proceeding or controversy within or outside of Bankruptcy Case.  Nothing in the Plan or Confirmation Order waives or modifies any orders previously entered in the Bankruptcy Case.  Debtor further reserve any and all of their rights against all Persons in the event the Plan is not confirmed or does not become effective.

11.17    <u>Post-Confirmation Liabilities of Reorganized Debtor.</u>  The Reorganized Debtor will not have any pre-petition liabilities except those expressly assumed or addressed under the Plan. The Reorganized Debtor will be responsible for all ongoing living expenses and payments due and owing or contemplated under the Plan.

## ARTICLE XII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of this Chapter 11 case after Confirmation of the Plan with respect to the following matters.

12.1    To hear and determine all controversies relating to or concerning the classification or allowance of Claims, including Professional Fees, Unknown Claims, disputed, contingent, or unliquidated Claims.

12.2    To determine and fix all Claims arising from the rejection of any executory contracts or leases.

12.3    To hear any pending motions for rejection, assumption or assignment of any executory contract or lease and to fix and determine any amounts alleged due and owing thereunder in order to cure defaults.

12.4    To enable Debtor to consummate any and all proceedings which they may bring prior to the closing of this case to set aside Liens or encumbrances, to recover any preferences, transfers, Assets, or damages to which Debtor may be entitled under applicable provisions of the Bankruptcy Code or other federal, state, or local law.

12.5    To recover all Assets and properties of Debtor, wherever located.

12.6    To permit amendments to the Schedules.

12.7    To make such orders as are necessary or appropriate to carry out the provisions of this Plan, including ruling on motions regarding the liquidation of the Assets contemplated hereunder.

12.8    To modify this Plan pursuant to the Bankruptcy Code and the Rules of Bankruptcy Procedure.

12.9    To hear any matters regarding interpretation, implementation or consummation of the Plan and to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order.

12.10    To decide issues concerning federal tax liability, reporting and withholding which may arise in connection with the Confirmation or consummation of this Plan.

12.11    To enter a final decree closing this Chapter 11 case.

[Remainder of page intentionally blank. Signature page follows.]

By:    /s/ *Michael A. Williams*
       Michael Jason Williams
       Date: August 16, 2024


TENDERED BY:

 DELCOTTO LAW GROUP PLLC

/s/ Dean A. Langdon
KY Bar No. 40104
Dean A. Langdon, Esq.
200 North Upper Street
Lexington, KY 40507
Telephone: (859) 231-5800
dlangdon@dlgfirm.com
COUNSEL FOR DEBTOR AND
DEBTOR IN POSSESSION


# EXHIBIT A

## PLAN DEFINITIONS

1.      "<u>Administrative Claim</u>" shall mean any Claim that is defined in 11 U.S.C. § 503(b) as being an "administrative expense" and granted priority under 11 U.S.C. § 507(a)(1) and including: (i) a Claim for any cost or expense of administration in connection with the Bankruptcy Case, including, without limitation, any actual, necessary cost or expense of preserving Debtor's Estate and operating and living expenses of Debtor incurred on or before the Effective Date; and (ii) all fees and charges assessed against Debtor's Estate under Chapter 123 of Title 28 of the United States Code.

2.      "<u>Allowed Administrative Claim</u>" shall mean an Administrative Claim for which the Bankruptcy Court has entered a Final Order allowing such Claim as an Administrative Claim provided that a request for payment of an Administrative Claim is filed with the Bankruptcy Court prior to thirty (30) days after the Effective Date of the Plan.

3.      "<u>Allowed Claim</u>" shall mean (a) a Claim which has been scheduled by Debtor as undisputed, and as to which Claim no objection has been made within the time allowed for the making of objections, (b) a Claim allowed by a Final Order, (c) a Claim as to which a timely and proper proof of claim or application for payment has been filed, and as to which proof of claim or application for payment no objection has been made within the time allowed for the making of objections or (d) a Claim allowed under the Plan, notwithstanding any objection filed thereto. Interest accrued after the Petition Date of the Bankruptcy Case shall not be part of any Allowed Claim against Debtor, except as required under the Plan or permitted by law.

17

4.      "Assets" shall mean, with respect to the Debtor, all of the right, title and interest in and to property of whatsoever type or nature, owned by Debtor, as of the Effective Date, as well as the proceeds, products, rents and profits from all of the foregoing.  Assets include, but are not limited to, property as defined in 11 U.S.C. § 541 (each identified item of property being herein sometimes referred to as an Asset).

5.      "Avoidance Actions" shall mean any Claims of the Debtor to avoid transfers or to recover money or property pursuant to 11 U.S.C. §§ 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553, including applicable state law Claims.

6.      "Bankruptcy Case" shall mean as to Debtor's case under Chapter 11 of the Bankruptcy Code.

7.      "Bankruptcy Code" or "Code" shall mean the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as in effect from time to time.

8.      "Bankruptcy Court" or "Court" shall mean the United States Bankruptcy Court for the Eastern District of Kentucky.

9.      "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure and Interim Bankruptcy Rules applicable to cases pending before the Bankruptcy Court and local rules applicable to cases pending before the Bankruptcy Court ("Local Rules"), as the same may from time to time be in effect and applicable to proceedings under the Plan.

10.     "Business Day" shall mean a day other than a Saturday, Sunday or other day on which national commercial banks are authorized or required by law to close.

11.     "Causes of Action" shall mean all of Debtor's and Estate's Claims and rights, both in law and in equity, including but not limited to, any and all Claims, demands, damages, actions, Causes of Action and expenses of any nature or kind, which Debtor and his Estate has or may assert.

12.     "Claim" shall mean (a) a right to payment, setoff or recoupment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract Claims), disputed, undisputed, legal, equitable, secured, or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, setoff or recoupment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract Claims), disputed, undisputed, secured or unsecured.

13.     "Confirmation" shall mean confirmation of the Plan pursuant to 11 U.S.C. § 1129, which shall occur upon entry of the Confirmation Order.

14.     "Confirmation Date" shall mean the date on which the Bankruptcy Court enters the Confirmation Order.

18

15.    "<u>Confirmation Hearing</u>" shall mean the Bankruptcy Court's hearing on confirmation of the Plan.

16.    "<u>Confirmation Order</u>" shall mean the Order of the Bankruptcy Court confirming the Plan with such modifications as may be agreed to or approved prior to the Effective Date by Debtor.

17.    "<u>Creditor</u>" shall mean the owner or holder of a Claim.

18.    "<u>Debtor</u>" shall mean Michael Jason Williams.

19.    "<u>Deficiency Claim</u>" shall mean an Allowed Claim of a Creditor, equal to the amount by which the aggregate Allowed Claim of such Creditor exceeds the sum of (a) any setoff rights of the Creditor permitted under 11 U.S.C. § 553 plus (b) the Secured Claim of such Creditor.

20.    "<u>Disallowed Claim</u>" shall mean a Claim, or any portion thereof, that has (a) been disallowed by a Final Order; (b) withdrawn by a Creditor; (c) been scheduled as contingent, disputed, or unliquidated, and as to which no proof of claim has been timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court; or (d) not otherwise deemed timely filed under applicable law or the provisions of a confirmed Plan.

21.    "<u>Disposable Income</u>" shall have the meaning set forth in 11 U.S.C. § 1325(b)(2) (as incorporated by 11 U.S.C. § 1129(a)(15)(B)), provided that funds received by the Debtor as distributions from any closely-held entity shall not become Disposable Income as a result of their inclusion in any financial projections submitted with the Plan.

22.    "<u>Effective Date</u>" shall mean fifteen (15) days from the date of the Confirmation Order, unless the Confirmation Order is stayed pending appeal, or if a stay of the Confirmation Order is in effect, then the first day after the stay is vacated, or as soon thereafter as is practicable.

23.    "<u>Final Order</u>" shall mean an order or judgment of a court which (a) shall not have been reversed, stayed, modified or amended and the time to appeal from, or to seek review or rehearing of, shall have expired and as to which no appeal or petition for review, rehearing, or certiorari is pending, or (b) if appealed from, shall have been affirmed and no further hearing, appeal, or Petition for Certiorari can be taken or granted.

24.    "<u>Impaired</u>" shall mean any class of Claims that is impaired within the meaning of 11 U.S.C. § 1124.

25.    "<u>Lien</u>" shall have the meaning assigned to it in 11 U.S.C. § 101(37).

26.    "<u>Person</u>" shall mean any individual, corporation, limited liability corporation or partnership, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental unit or any political subdivision thereof or other entity.

27.      "<u>Petition Date</u>" shall mean May 24, 2024, being the date of the filing of the voluntary Petition for relief by Debtor under the Bankruptcy Code.

28.      "<u>Plan</u>" shall mean this Plan proposed by Debtor and filed in this Bankruptcy Case and as it may be further amended, modified or supplemented from time to time as provided therein.

29.      "<u>Priority Claim</u>" shall mean a Claim entitled to priority pursuant to 11 U.S.C. § 507(a)(4) or (5).

30.      "<u>Professional Claims</u>" shall mean the allowances made by the Court to the Professionals, each of which allowance shall be an Administrative Claim.

31.      "<u>Professionals</u>" shall mean DelCotto in its capacity as counsel for Debtor; and all attorneys, accountants, appraisers, examiners, consultants, and other professional Persons properly retained by Debtor and approved by the Court under the Code who performed professional services for or on behalf of the Debtor, from the Petition Date through and including the Confirmation Date, whose services and expenses are allowable by the Court under 11 U.S.C. § 330.

32.      "<u>Pro rata</u>" shall mean ratable payment, without preference.

33.      "<u>Schedules</u>" shall mean those Schedules and statements of financial affairs filed by the Debtor under Fed. R. Bankr. P. 1007, as same may be amended from time to time.

34.      "<u>Secured Claim</u>" shall mean (a) a Claim secured by a Lien on property of Debtor, which Lien is valid, superior, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly established in Debtor's Bankruptcy Case, but only to the extent that such Claim does not exceed the value of Debtor's Assets which the Bankruptcy Court finds are valid collateral for such Claim (except, if the class of which such Claim is a part makes the election provided for in 11 U.S.C. § 1111(b)(2), the entire amount of the Claim shall be a Secured Claim) and (b) a Claim allowed under the Plan as a Secured Claim.

35.      "<u>Secured Creditor</u>" shall mean the owner or holder of a Secured Claim.

36.      "<u>Tax Claims</u>" shall mean Claims of any Person for the payment of taxes (a) accorded priority pursuant to 11 U.S.C. §§ 507(a)(1) and (8), or (b) those secured by valid Liens on Assets of Debtor as of the Confirmation Date.

37.      "<u>Tax Creditor</u>" shall mean the holder of a Tax Claim.

38.      "<u>Unsecured Claims</u>" shall mean all Claims held by Creditors of the Debtor, including Deficiency Claims and Claims arising out of the rejection of executory contracts, other than Secured Claims, Administrative Claims, Priority Claims, and Tax Claims.

39.      "<u>Unsecured Creditor</u>" shall mean the owner or holder of an Unsecured Claim.

## EXHIBIT B- <u>BRIEF HISTORY OF DEBTOR</u>

Mr. Williams has worked in the cattle industry for all of his adult life, beginning with a company founded by his great-grandfather. He is the majority or sole owner of five entities through which business has been conducted: Williams & Son Livestock, LLC ("Williams & Sons"); J Williams Cattle, LLC ("JW Cattle"); JW Livestock, LLC ("JW Livestock"), Cowboy Capone, LLC ("Capone"), and Laurel Livestock Market, Inc. ("Laurel Livestock," and with the other companies, the "Businesses"). Mr. Williams currently works as an independent cattle broker.

Other than Capone, the Businesses are either no longer operating or winding down their operations.  JW Cattle was formed in August 2022 in an effort to assume the business of raising, purchasing and selling cattle which had been conducted by Williams & Son. Williams & Son was initially owned by Mr. Williams and his father. Mr. Williams assumed sole ownership in 2019, but the company was burdened by substantial debts and effectively stopped operating in 2022.  JW Livestock engaged in cattle transportation throughout the southeast, northeast and midwestern United States, at one time operating numerous tractors and trailers. However, JW Livestock experienced substantial fluctuations in business due to market factors and was ultimately unable to service the debts incurred to acquire its rolling stock. JW Livestock has permitted its secured lenders to recover their collateral and has ceased operations. Laurel Livestock owned and operated a stockyard operation in London, Kentucky. Capone engages in purchasing and selling cattle for third parties and employs an individual to handle the accounting and banking aspects of the Debtor's cattle brokering. Other than Capone, none of the Business entities are generating any revenue.

Although Mr. Williams continues to engage in business in the cattle industry, a consequence of the winding down of Mr. Williams' businesses is substantial personal exposure on debts incurred by the businesses.

Mr. Williams' has assets with equity and in order to preserve that equity through contribution of his disposable income, or to realize equity for the benefit of creditors by an orderly sale, Mr. Williams elected to seek relief under Subchapter V of Chapter 11 of the Bankruptcy Code.