Docusign Envelope ID: 8A5DB645-F3C9-49D5-AFA4-7F6290C855DB

Listing Broker (Co.) _____ ( _____ ) By _____ ( _____ )
                                                Office code                                             individual code

Selling Broker (Co.) **Berkshire Hathaway HomeService** ( _____ ) By **Cat Kick** ( _____ )
                                                Office code                                             individual code

[INDIANA ASSOCIATION OF REALTORS logo]

# PURCHASE AGREEMENT
## (IMPROVED PROPERTY)
### For use only by members of the Indiana Association of REALTORS®

1  Date: **September 10, 2024**

3  A.  BUYER: _____ **Penny Moore** _____ ("Buyer")
4  agrees to buy the following property from the owner ("Seller") for the consideration and subject to the following terms,
5  provisions, and conditions:

7  B.  PROPERTY: The property ("Property") is known as _____ **103 Park Ave** _____
8  in _____ **Vernon** _____ Township, _____ **Jackson** _____ County, _____ **Crothersville** _____
9  Indiana, _____ **47229** _____ (zip code) legally described as: **BENHAM & DENSFORD ADD LOT 15 EXC. 15'**
10  **PARALLEL LINES OFF N END**
11  together with any existing permanent improvements and fixtures attached **(unless leased or excluded)**, including, but
12  not limited to, electrical and/or gas fixtures, heating and central air-conditioning equipment and all attachments thereto,
13  built-in kitchen equipment, sump pumps, water softener, water purifier, fireplace inserts, gas logs and grates, central
14  vacuum equipment, window shades/blinds, curtain rods, drapery poles and fixtures, ceiling fans and light fixtures, towel
15  racks and bars, storm doors, windows, awnings, TV antennas, wall mounts, satellite dishes, storage barns, all
16  landscaping, mailbox, garage door opener(s) with control(s) AND THE FOLLOWING: **(If applicable, any smart home**
17  **devices should be addressed in this paragraph.)** _____

20  EXCLUDES THE FOLLOWING (include leased items): _____

23  The terms of this Agreement will determine what items are included/excluded, not the Seller's Disclosure Form,
24  multiple listing service or other promotional materials. All items sold shall be fully paid for by Seller at time of
25  closing the transaction.

27  Buyer should verify and rely upon Buyer's own determination of total square footage, land, room dimensions
28  or community amenities if material, and releases the Seller, the Listing and Selling Brokers and all licensees
29  associated with Brokers from any and all liability relating to such determination.

31  C.  PRICE: Buyer will pay the total purchase price of ($ **91,000.00** ) **Ninety-One Thousand**
32  _____ U.S. Dollars for the Property. If Buyer obtains an appraisal of the Property, this
33  Agreement is contingent upon the Property appraising at no less than the agreed upon purchase price. If appraised
34  value is less than the agreed upon purchase price Buyer retains the option to proceed toward closing at the agreed
35  upon purchase price. If Buyer is not willing or able to proceed at the agreed upon purchase price then: 1) either party
36  may terminate this Agreement; or 2) parties may mutually agree to amend the agreed upon price.

38  D.  EARNEST MONEY:
39      1.  SUBMISSION: Buyer submits $ **n/a** _____ U.S. Dollars as earnest money which shall be
40          applied to the purchase price at closing. If not submitted with Purchase Agreement, **Earnest money shall be**
41          **delivered to Escrow Agent within** _____ ☐ hours ☐ **days after acceptance of offer to purchase.**
42          Escrow Agent to be: ☐ Listing Broker ☐ Selling Broker ☐ Other _____. Escrow agent shall, after
43          acceptance of the Agreement and **within two (2) banking days of receipt of the earnest money**, deposit the
44          earnest money into its escrow account and hold it until time of closing the transaction or termination of this Agreement.
45          Earnest money shall be returned promptly to Buyer in the event this offer is not accepted. If Buyer fails to timely
46          submit Earnest Money to Escrow Agent as agreed to above, Buyer agrees Seller may terminate this Agreement by
47          serving a Notice of Termination to Buyer prior to Escrow Agent's receipt of the Earnest Money.
48      2.  DISBURSEMENT: Upon notification that Buyer or Seller intends not to perform, and if Escrow Agent is the Broker,
49          then Broker holding the Earnest Money may release the Earnest Money as provided in this Agreement. If no
50          provision is made in this Agreement, Broker may send to Buyer and Seller notice of the disbursement by certified
51          mail of the intended payee of the Earnest Money as permitted in 876 IAC 8-2-2. If neither Buyer nor Seller enters
52          into a mutual release or initiates litigation within sixty (60) days of the mailing date of the certified letter, Broker may
53          release the Earnest Money to the party identified in the certified letter. If Escrow Agent is anyone other than a
54          Broker, the 60 day letter release process will not be available. If the Escrow Agent is the Broker, Broker shall be
55          absolved from any responsibility to make payment to Seller or Buyer unless the parties enter into a Mutual Release

Berkshire Hathaway HomeService, 905 E Tipton Seymour IN 47274        Phone: (555)555-5555   Fax:        Penny Moore
Cat Kick        Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

56-59 or a Court issues an Order for payment, except as permitted in 876 IAC 8-2-2 (release of earnest money). Buyer and Seller agree to hold the Broker harmless from any liability, including attorney's fees and costs, for good faith disbursement of Earnest Money in accordance with this Agreement and licensing regulations.

60 E. **METHOD OF PAYMENT:** (Check appropriate paragraph number)

61-65  1. ☐ **CASH:** The entire purchase price shall be paid in cash, U.S. Dollars, and no financing is required. Buyer to provide proof of funds submitted ☐ with offer ☐ within _____ days of acceptance. If Buyer fails to timely submit proof of funds, Buyer agrees Seller may terminate this Agreement by serving a Notice of Termination prior to receiving the proof of funds. Buyer ☐ will ☐ will not have an appraisal.

66-74  2. ☒ **NEW MORTGAGE:** Completion of this transaction shall be contingent upon the Buyer's ability to obtain a ☐ Conventional ☐ Insured Conventional ☒ FHA ☐ VA ☐ Other: _____ first mortgage loan for **96.500** % of purchase price, payable in not less than **30** years, with an original rate of interest not to exceed _____ % per annum and not to exceed _____ points. Buyer shall pay all costs of obtaining financing, except for any Seller concessions agreed to by Seller. Any inspections and charges which are required to be made and charged to Buyer or Seller by the lender, FHA, VA, or mortgage insurer, shall be made and charged in accordance with their prevailing rules or regulations and shall supersede any provisions of this Agreement. Buyer ☐ is ☒ is not using a down payment assistance program that may require an inspection.

75-76  3. ☒ **SELLER CONCESSIONS:** Seller shall provide an allowance up to $**6,000.00** U.S. Dollars to be used by Buyer toward any lender allowed closing costs.

77-78  4. ☒ **BUYER BROKER COMPENSATION:** (Attach Addendum to Purchase Agreement, Buyer Request for Seller To Pay Buyer Broker Compensation)

79  5. ☐ **ASSUMPTION:** (Attach Financing Addendum)
80  6. ☐ **CONDITIONAL SALES CONTRACT:** (Attach Financing Addendum)
81  7. ☐ **OTHER METHOD OF PAYMENT:** (Attach Financing Addendum)

83 F. **TIME FOR OBTAINING FINANCING:**

84-87  1. **APPLICATION:** Within **7** days after the acceptance of this Agreement, Buyer agrees to make written application for any financing necessary, to complete this transaction or for approval to assume the unpaid balance of the existing mortgage and to make a diligent effort to meet the lender's requirements and to obtain financing in cooperation with the Broker and Seller. **Buyer directs lender to order appraisal immediately.**

88-91  2. **APPROVAL:** No more than **45** days after acceptance of this Agreement shall be allowed for obtaining loan approval, which shall include a completed appraisal, if required by lender or mortgage assumption approval. If an approval is not obtained within the time specified above, this Agreement may terminate unless an extension of time for this purpose is mutually agreed to in writing.

93 G. **CLOSING:**

94-97  1. **DATE:** The closing of the sale (the "Closing Date") shall be on or before **October 25, 2024**, or within _____ days after _____, whichever is later or this Agreement shall terminate unless an extension of time is mutually agreed to in writing. Any closing date earlier than the latest date above must be by mutual written agreement of the parties.

98-99  2. **FEE:** The settlement or closing fee incurred in conducting the settlement charged by the closing agent or company shall be paid by ☐ Buyer (included in allowance, if provided) ☐ Seller ☒ Shared equally.

100-106  3. **CONTINGENCY:** This Agreement:
☐ is not contingent upon the closing of another transaction;
☐ is contingent upon the closing of the pending transaction on Buyer's property located at _____ scheduled to close by _____.
☐ is contingent upon the acceptance of a Purchase Agreement on Buyer's property:
☐ Addendum to Purchase Agreement First Right Contingency. See attached Addendum.
☐ Addendum to Purchase Agreement Limited Purchase Contingency Right. See attached Addendum.

107-113  4. **GOOD FUNDS:** Notwithstanding terms to the contrary, the Parties agree that as a condition to Closing, all funds delivered to the closing agent's escrow account be in such form that the closing agent shall be able to disburse in compliance with I.C. 27-07-3.7 et. seq. Therefore, all funds from a single source of $10,000, U.S. Dollars, or more shall be wired unconditionally to the closing agent's escrow account and all funds under $10,000, U.S. Dollars, from a single source shall be good funds as so defined by statute. Buyer is advised that the cost incurred to wire funds on behalf of the buyer to the closing agent's escrow account for the closing of this transaction shall become an expense to the buyer and the actual cost incurred shall appear on the closing statement.

114-117  5. **WIRE FRAUD.** If you receive any electronic communication directing you to transfer funds or provide nonpublic personal information, EVEN IF THAT ELECTRONIC COMMUNICATION APPEARS TO BE FROM BROKER OR TITLE COMPANY, do not respond until you verify the authenticity by direct communication with

H. **POSSESSION:**
1. The possession of the Property shall be delivered to Buyer [X] **at closing** [ ] within _____ days beginning the day after closing by _____ [ ] AM [ ] PM [ ] noon or [ ] on or before _____ by _____ [ ] AM [ ] PM [ ] noon if closed. For each day Seller is entitled to possession after closing, Seller shall pay to Buyer at closing $_____ U.S. Dollars per day.
If Seller does not deliver possession by the date and time required in the first sentence of this paragraph, Seller shall pay Buyer $**200.00** U.S. Dollars per day as **liquidated damages** until possession is delivered to Buyer; and Buyer shall have all other legal and equitable remedies available against the Seller.
2. **MAINTENANCE OF PROPERTY:** Seller shall maintain the Property in its present condition until its **possession** is delivered to Buyer, subject to repairs in response to any inspection. Buyer may inspect the Property prior to closing to determine whether Seller has complied with this paragraph. **Seller shall remove all debris and personal property not included in the sale.**
3. **CASUALTY LOSS:** Risk of loss by damage or destruction to the Property prior to the closing shall be borne by Seller, including any deductible(s). In the event any damage or destruction is not fully repaired prior to closing, Buyer, at Buyer's option, may either **(a) terminate this Agreement with prompt return of earnest money to buyer or (b) elect to close the transaction**, in which event Seller's right to all real property insurance proceeds resulting from such damage or destruction shall be assigned in writing by Seller to Buyer.
4. **UTILITIES/MUNICIPAL SERVICES:** Seller shall pay for all municipal services and public utility charges through the day of **possession**.
5. **HOME HEATING FUEL:** Any remaining fuel stored in tank(s) [ ] to be included in the sale [ ] will be purchased by Buyer at current market price measured within five (5) days prior to closing [X] not applicable.

I. **LEASED PROPERTY:** If this Property is subject to an enforceable Lease between Seller and tenant(s), such Lease will be provided to Buyer by Seller within _____ days after acceptance of this Agreement. If Buyer does not make a written response to the Lease within _____ days after receipt, the Lease shall be deemed acceptable. Possession will be subject to tenant's rights. In the event the Buyer does not accept any provision(s) of the Lease and such provision(s) cannot be re-negotiated with Tenant(s), this Agreement may be terminated by the Buyer and the earnest money deposit shall be refunded to Buyer promptly.

J. **SURVEY:** Buyer shall receive a (Check one) [ ] SURVEYOR LOCATION REPORT, which is a survey where corner markers are not set; [ ] BOUNDARY SURVEY, which is a survey where corner markers of the Property are set prior to closing; [X] WAIVED, no survey unless required by lender; at (Check one) [ ] Buyer's expense (included in allowance, if provided  [ ] Seller's expense  [ ] Shared equally and ordered by  [ ] Buyer  [ ] Seller [ ] Other _____. The survey shall (1) be received prior to closing and certified as of a current date, (2) be reasonably satisfactory to Buyer, (3) show the location of all improvements and easements. If Buyer waives the right to conduct a survey, the Seller, the Listing and Selling Brokers, and all licensees associated with Brokers are released from any and all liability relating to any issues that could have been discovered by a survey. This release shall survive the closing.

K. **FLOOD AREA:** If the property is located in a flood plain, Buyer may be required to carry flood insurance at Buyer's expense. Revised flood maps and changes to Federal law may substantially increase future flood insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood insurance agents regarding the need for flood insurance and possible premium increases. Buyer [X] may [ ] may not terminate this Agreement if the Property requires flood insurance.

L. **BUILDING USE LIMITATIONS:** Buyer's intended use for the Property is [X] single-family, owner occupied use [ ] other _____ Buyer shall have _____ days after acceptance of Purchase Agreement to satisfy the following building or use limitation: _____.

M. **HOMEOWNER'S INSURANCE:** Completion of this transaction shall be contingent upon the Buyer's ability to obtain a favorable written commitment for homeowner's insurance within _____ days after acceptance of this Agreement. Buyer should consult with one or more insurance agents regarding optional, or additional, coverage.

N. **ENVIRONMENTAL CONTAMINANTS ADVISORY/RELEASE:** Buyer and Seller acknowledge that Listing Broker, Selling Broker and all licensees associated with Brokers are NOT experts and have NO special training, knowledge or experience with regard to the evaluation or existence of possible lead-based paint, radon, mold and other biological contaminants ("Environmental Contaminants") which might exist and affect the Property. Environmental Contaminants at harmful levels may cause property damage and serious illness, including but not limited to, allergic and/or respiratory problems, particularly in persons with immune system problems, young children and/or the elderly.

Docusign Envelope ID: 8A5DB645-F3C9-4963-AFA4-7F6290C855DD

180 Buyer is STRONGLY ADVISED to obtain inspections (see below) to fully determine the condition of the Property and its
181 environmental status. The ONLY way to determine if Environmental Contaminants are present at the Property at
182 harmful levels is through inspections.
183
184 Buyer and Seller agree to consult with appropriate experts and accept all risks for Environmental
185 Contaminants and release and hold harmless all Brokers, their companies and licensees from any and all
186 liability, including attorney's fees and costs, arising out of or related to any inspection, inspection result,
187 repair, disclosed defect or deficiency affecting the Property, including Environmental Contaminants. This
188 release shall survive the closing.
189
190 O. **INSPECTIONS:** (Check one)
191
192 Buyer has been made aware that independent inspections disclosing the condition of the property may be
193 conducted and has been afforded the opportunity to require such inspections as a condition of this Agreement.
194
195 1. [X]   BUYER WAIVES THE RIGHT TO HAVE INDEPENDENT INSPECTIONS
196     Buyer WAIVES inspections and relies upon the condition of the Property based upon Buyer's own
197     examination and releases the Seller, the Listing and Selling Brokers and all licensees associated with
198     Brokers from any and all liability relating to any defect or deficiency affecting the Property, which
199     release shall survive the closing. Inspections required by law, FHA/VA or by lender are not included in
200     this waiver.
201
202 2. [ ]   BUYER RESERVES THE RIGHT TO HAVE INDEPENDENT INSPECTIONS (including Lead-Based Paint)
203     Buyer reserves the right to have independent inspections in addition to any inspection required by FHA, VA, or
204     Buyer's lender(s). All inspections shall be:
205     a. At Buyer's expense (unless agreed otherwise by the parties or required by lender);
206     b. Conducted by licensed, independent inspectors or qualified independent contractors selected by
207        Buyer within the following time periods.
208 Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's inspections. Seller must make all
209 areas of the Property available and accessible for Buyer's inspection.
210
211 3. [ ]   PROPERTY IS SOLD "AS IS". See Attached Addendum.
212
213 INSPECTION/RESPONSE PERIOD (Does not apply with As Is Addendum):
214 A. **INITIAL INSPECTION PERIOD:** Buyer shall order all independent inspections after acceptance of the Purchase
215     Agreement. Buyer shall have _____ days beginning the day following the date of acceptance of the Purchase
216     Agreement to respond to the inspection report(s) in writing to Seller (see "Buyer's Inspection Response").
217 B. **SCOPE OF INSPECTION:** Inspections may include but are not limited to the condition of the following
218     systems and components: heating, cooling, electrical, plumbing, roof, walls, ceilings, floors, foundation,
219     basement, crawl space, well/septic, water, wood destroying insects and organisms, lead-based paint (note:
220     intact lead-based paint that is in good condition is not necessarily a hazard), radon, mold and other
221     biological contaminants and/or the following:
222 _____.
223 C. **ADDITIONAL INSPECTION:** If the INITIAL inspection report reveals the presence of lead-based paint, radon, mold
224     and other biological contaminants, or any other condition that requires further examination or testing, then Buyer
225     shall notify Seller in writing and have _____ additional days from the deadline listed above to order,
226     receive and respond in writing to all inspection reports.
227 D. **INSPECTION RESPONSE(S) REQUIRED:** If the Buyer does not comply with any Inspection/Response Period or make
228     a written objection to any problem revealed in a report within the applicable Inspection/Response Period, the Property
229     shall be deemed to be acceptable. If one party fails to respond or request in writing an extension of time to respond to the
230     other party's Independent Inspection Response, then that inspection response is accepted. A timely request for
231     extension is not an acceptance of the inspection response, whether or not granted. A reasonable time period to respond
232     is required to prevent misuse of this acceptance provision. Factors considered in determining reasonable time periods
233     include, but are not limited to, availability of responding party to respond, type and expense of repairs requested and
234     need of responding party to obtain additional opinions to formulate a response.
235 E. **IF DEFECT IS IDENTIFIED:** If an Inspection Report reveals a DEFECT(S) with the Property, the Buyer must:
236     1. Provide the inspection report, or relevant parts thereof, to the Seller; and
237     2. Give the Seller the opportunity to remedy the defect(s).
238 F. **SELLER RESPONSE TO INSPECTION DEFECT:** If Seller is unable or unwilling to remedy the defect(s) to Buyer's
239     reasonable satisfaction before closing (or at a time otherwise agreed to by the parties), then Buyer may terminate this
240     Agreement or waive such defect(s) and the transaction shall proceed toward closing. Seller may terminate this
241     Agreement by submitting a Mutual Release if Buyer chooses to further negotiate with subsequent Inspection
242     Response(s).

243 G. **DEFECT DEFINED:** Under Indiana law, "Defect" means a condition that would have a significant adverse effect on the value of the Property, that would significantly impair the health or safety of future occupants of the property, or that if not repaired, removed, or replaced would significantly shorten or adversely affect the expected normal life of the premises.

247 H. **PREVIOUSLY DISCLOSED DEFECT:** Buyer agrees that any property defect(s) previously disclosed by Seller, or routine maintenance and minor repair items mentioned in any report, shall not be a basis for termination of this agreement.

249 I. **INSPECTION RELEASE:** Buyer releases and holds harmless all Brokers and their companies from any and all liability, including attorney's fees and costs, arising out of or related to any inspection, inspection result, repair, disclosed defect or deficiency affecting the Property, including but not limited to lead-based paint, radon, mold and other biological contaminants. This release shall survive the closing.

254 P. **LIMITED HOME WARRANTY PROGRAM:**
Buyer acknowledges the availability of a LIMITED HOME WARRANTY PROGRAM with a deductible paid by Buyer which ☐ will [X] will not be provided at a cost not to exceed $ _____ U.S. Dollars charged to ☐ **Buyer** ☐ **Seller and ordered by** ☐ **Buyer** ☐ **Seller.** Buyer and Seller acknowledge this LIMITED HOME WARRANTY PROGRAM may not cover any pre-existing defects in the Property nor replace the need for an independent home inspection. Broker may receive a fee from the home warranty provider and/or a member benefit. The Limited Home Warranty Program is a contract between Buyer/Seller and the Home Warranty Provider.

262 The Parties agree that Brokers and their companies shall be released and held harmless in the event of claims disputes with the Home Warranty Provider.

265 Q. **DISCLOSURES: (Check one)**
1. Buyer [X] has ☐ has not ☐ not applicable received and executed SELLER'S RESIDENTIAL REAL ESTATE SALES DISCLOSURE.
2. Buyer [X] has ☐ has not ☐ not applicable received and executed a LEAD-BASED PAINT CERTIFICATION AND ACKNOWLEDGEMENT.

271 R. **TITLE APPROVAL:** Prior to closing, Buyer shall be furnished with [X] **a title insurance commitment for the most current and comprehensive ALTA Owner's Title Insurance Policy available** in the amount of the purchase price or ☐ **an abstract of title continued to date**, showing marketable title to Property in Seller's name. Seller must convey title free and clear of any encumbrances and title defects, with the exception of any mortgage assumed by Buyer and any restrictions or easements of record not materially interfering with Buyer's intended use of the Property. A title company, at Buyer's request, can provide information about availability of various additional title insurance coverages and endorsements and the associated costs.

278 **OWNER'S TITLE INSURANCE PREMIUM** and that portion of Title Service Fees incurred to prepare the Owner's Policy (including title search and examination and commitment preparation), to be paid by ☐ **Buyer (included in allowance, if provided)** [X] **Seller** ☐ **Shared equally.**

282 **LENDER'S TITLE INSURANCE PREMIUM** and that portion of Title Service Fees incurred to prepare the Lender's Policy (including title search and examination and commitment preparation), if applicable, to be paid by [X] **Buyer (included in allowance, if provided)** ☐ **Seller** ☐ **Shared equally** ☐ **Other** _____

287 The parties agree that ☐ **Seller** [X] **Buyer** will select a title insurance company to issue a title insurance policy and will order the commitment [X] **immediately** or ☐ **other:** _____

291 Pursuant to Federal and State Law, Seller cannot make Seller's selection of a title insurance provider a condition of this Agreement.

294 Seller agrees to pay the cost of obtaining all other documents necessary to perfect title (including the cost of the deed and vendor's affidavit), so that marketable title can be conveyed.

297 S. **TAXES: (Check appropriate paragraph number)**
1. ☐ Buyer will assume and pay all taxes on the Property beginning with the taxes due and payable on _____, _____, and all taxes due thereafter. At or before closing, Seller shall pay all taxes for the Property payable before that date.
2. [X] All taxes that have accrued for any **prior calendar year** that remain unpaid shall be paid by Seller either to the County Treasurer and/or the Buyer in the form of a credit at closing. All taxes that have accrued for the **current calendar year** shall be prorated on a calendar-year basis as of the day immediately prior to the Closing Date.
3. ☐ For recent construction or other tax situations. Seller will give a tax credit of $ _____ U.S. Dollars to Buyer at closing. This shall be a final settlement.

**For purposes of paragraph 1 and 2:** For the purpose of determining the credit amount for accrued but unpaid taxes, taxes shall be assumed to be the same as the most recent year when taxes were billed based upon *certified* tax rates. This shall be a final settlement.

**WARNING:**

\*The succeeding year tax bill for recently constructed homes or following reassessment periods may greatly exceed the last tax bill available to the closing agent.

\*Buyer acknowledges Seller's tax exemptions and/or credits may not be reflected on future tax bills.

\*Buyer may apply for current-year exemptions/credits at or after closing.

T. **PRORATIONS AND SPECIAL ASSESSMENTS:** Insurance, if assigned to Buyer, interest on any debt assumed or taken subject to, any rents, all other income and ordinary operating expenses of the Property, including but not limited to, public utility charges, shall be prorated as of the day immediately prior to the Closing Date. Seller shall pay any special assessments applicable to the Property for municipal improvements previously made to benefit the Property. Seller warrants that Seller has no knowledge of any planned improvements which may result in assessments and that no governmental or private agency has served notice requiring repairs, alterations or corrections of any existing conditions. Public or municipal improvements which are not completed as of the date above but which will result in a lien or charge shall be paid by Buyer. Buyer will assume and pay all special assessments for municipal improvements completed after the date of this Agreement.

U. **TIME:** Time is of the essence. Time periods specified in this Agreement and any subsequent Addenda to the Purchase Agreement are calendar days and shall expire at 11:59 PM of the date stated unless the parties agree in writing to a different date and/or time.

**Note:** Seller and Buyer have the right to withdraw any offer/counter offer prior to written acceptance and delivery of such offer/counter offer.

V. **HOMEOWNERS ASSOCIATION/CONDOMINIUM ASSOCIATION ("Association"):** If the property is located in a community governed by a mandatory homeowners association, the following must be provided by the Seller to Buyer within ____ days after acceptance of this Agreement, but not later than ten (10) days prior to closing pursuant to I.C. 32-21-5-8.5: 1. A disclosure that the property is in a community governed by a homeowners association; 2) A copy of the recorded governing documents; 3) a statement indicating there are assessments and the amount of any assessments; 4) The following information about a board member, homeowners association agent, or other person who has a contract with the homeowners association to provide any management services for the homeowners association: (A) the name. (B) the business or home address. Brokers are not responsible for obtaining, verifying or interpreting this information. The parties agree that Brokers and their companies shall be released and held harmless from any and all liability arising out of or related to these documents.

If the Buyer does not make a written response to the documents within ____ days after receipt, the documents shall be deemed acceptable. In the event the Buyer does not accept the provisions in the documents and such provisions cannot be waived, this Agreement may be terminated by the Buyer and the earnest money deposit shall be refunded to Buyer promptly. Any approval of sale required by the Association shall be obtained by the Seller, in writing, within ____ days after Buyer's approval of the documents. Fees charged by the "Association", or its management company, for purposes of verification of good standing and/or transfer of ownership shall be shared equally by Buyer and Seller. Start-up or one time reserve fees, if any, shall be paid by Buyer.

**Buyer acknowledges that in every neighborhood there are conditions which others may find objectionable. Buyer shall therefore be responsible to become fully acquainted with neighborhood and other off-site conditions that could affect the Property.**

W. **ATTORNEY'S FEES:** Any party to this Agreement who is the prevailing party in any legal or equitable proceeding against any other party brought under or with relation to the Agreement or transaction shall be additionally entitled to recover court costs and reasonable attorney's fees from the non-prevailing party.

X. **FAIR HOUSING:** The parties acknowledge that the Fair Housing Act prohibits discrimination in housing because of race, color, national origin, religion, sex, familial status, and disability. **Due to Fair Housing risks, Brokers will not prepare, review, or submit personal information letters, including photographs, from Buyer to Seller.** The National Association of REALTORS® Code of Ethics also prohibits REALTORS® from discriminating on the basis of sexual orientation or gender identity.

Y. **ADDITIONAL PROVISIONS:**

1. Unless otherwise provided, any proration's for rent, taxes, insurance, damage deposits, association dues/assessments, or any other items shall be computed as of the day immediately prior to the Closing Date.

2. Underground mining has occurred in Indiana, and Buyers are advised of the availability of subsidence insurance. Broker is not responsible for providing or verifying this information.

3. The Indiana State Police has created a registry of known meth contaminated properties which can be found at www.in.gov/meth. Click on "Clan Lab Addresses." Broker is not responsible for providing or verifying this information.

4. The Indiana Sheriff's Sex Offender Registry (www.indianasheriffs.org) exists to inform the public about the identity, location and appearance of sex offenders residing within Indiana. Broker is not responsible for providing or verifying this information.

5. Conveyance of this Property shall be by general Warranty Deed, or by _____ subject to taxes, easements, restrictive covenants and encumbrances of record, unless otherwise agreed.

6. If it is determined Seller is a "foreign person" subject to the Foreign Investment in Real Property Tax Act, Seller will pay applicable tax obligation.

7. Any notice required or permitted to be delivered shall be deemed received when personally delivered, transmitted electronically or digitally or sent by express courier or United States mail, postage prepaid, certified and return receipt requested, addressed to Seller or Buyer or the designated agent of either party.

8. This Agreement shall be construed under and in accordance with the laws of the State of Indiana and is binding upon the parties' respective heirs, executors, administrators, legal representatives, successors, and assigns. Buyer may not assign this Agreement without the consent of Seller.

9. In case any provision contained in this Agreement is held invalid, illegal, or unenforceable in any respect, the invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement.

10. This Agreement constitutes the sole and only agreement of the parties and supersedes any prior understandings or written or oral agreements between the parties' respecting the transaction and cannot be changed except by their written consent.

11. All rights, duties and obligations of the parties shall survive the passing of title to, or an interest in, the Property.

12. Broker(s) may refer Buyer or Seller to other professionals, service providers or product vendors, including lenders, loan brokers, title insurers, escrow companies, inspectors, pest control companies, contractors and home warranty companies. Broker(s) does not guarantee the performance of any service provider. Buyer and Seller are free to select providers other than those referred or recommended to them by Broker(s). The Parties agree that Brokers and their companies shall be released and held harmless in the event of claims disputes with any service provider.

13. By signing below, the parties to this transaction acknowledge: 1) receipt of a copy of this Agreement; and 2) information regarding this transaction may be published in a listing service, Internet or other advertising media.

14. Any amounts payable by one party to the other, or by one party on behalf of the other party, shall not be owed until this transaction is closed.

15. Buyer and Seller consent to receive communications from Broker(s) via telephone, U.S. mail, email, text message and facsimile at the numbers/addresses provided to Broker(s) unless Buyer and Seller notify Broker(s) in writing to the contrary.

16. Buyer discloses to Seller that Buyer holds Indiana Real Estate License # _____.

17. Where the word "Broker" appears, it shall mean "Licensee" as provided in I.C.25-34.1-10-6.8.

424 Z.  **FURTHER CONDITIONS** (List and attach any addenda): _____

425
426
427
428
429
430
431
432
433
434
435
436
437
438
439
440

441 AA. **CONSULT YOUR ADVISORS:** Buyer and Seller acknowledge they have been advised that, prior to signing this
442  document, they may seek the advice of an attorney for the legal or tax consequences of this document and the
443  transaction to which it relates. In any real estate transaction, it is recommended that you consult with a professional,
444  such as a civil engineer, environmental engineer, or other person, with experience in evaluating the condition of the
445  Property.
446
447 BB. **ACKNOWLEDGEMENTS:** This ☐ is ☒ is not a limited agency transaction. Buyer and Seller acknowledge that each
448  has received agency office policy disclosures, has had agency explained, and now confirms all agency relationships. Buyer
449  and Seller further acknowledge that they understand and accept agency relationships involved in this transaction.
450
451  **EXPIRATION OF OFFER:** Unless accepted in writing by Seller and delivered to Buyer by _____12:00_____
452  ☐ AM ☐ PM ☒ Noon, on _____September 13, 2024_____, this Purchase Agreement shall be null
453  and void and all parties shall be relieved of any and all liability or obligations.
454
455  This Agreement/contract together with any and all subsequent forms, amendments and addenda may be executed
456  simultaneously or in two or more counterparts, each of which shall be deemed an original but all of which together shall
457  constitute one and the same instrument. The parties agree that this Agreement, together with any and all subsequent
458  forms, amendments and addenda may be transmitted between them electronically or digitally. The parties intend that
459  electronically or digitally transmitted signatures constitute original signatures and are binding on the parties. The original
460  documents shall be promptly delivered, if requested.
461
462  **LEGAL REMEDIES/DEFAULT:** If this offer is accepted and Buyer fails or refuses to close the transaction, without legal
463  cause, the earnest money shall be retained by Seller for damages Seller has or will incur. Seller retains all rights to seek other
464  legal and equitable remedies, which may include specific performance and additional monetary damages. All parties have the
465  legal duty to use good faith and due diligence in completing the terms and conditions of this Agreement. A material failure to
466  perform any obligation under this Agreement is a default which may subject the defaulting party to liability for damages and/or
467  other legal remedies, which, as stated above, may include specific performance and monetary damages in addition to loss of
468  Earnest Money.
469
470  By signature below, the parties verify that they understand and approve this Purchase Agreement and acknowledge
471  receipt of a signed copy.
472
473  Signed by: *Penny Moore*    9/10/2024 | 9:10 PM EDT
474  BUYER'S SIGNATURE              DATE            BUYER'S SIGNATURE              DATE
475
476  Penny Moore
477  PRINTED                                        PRINTED

103 Park Ave, Crothersville, IN  47229
(Property Address)
Page 8 of 9   (Purchase Agreement)
COPYRIGHT IAR July 2024

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com       Penny Moore

478 SELLER'S RESPONSE: (Check appropriate paragraph number):
479
480 On ___9/10/2024___, at _9:30_  ☐ AM ☒ PM ☐ Noon
481
482 1. ☒ The above offer is Accepted.
483
484 2. ☐ The above offer is Rejected.
485
486 3. ☐ The above offer is Countered. See Counter Offer. Seller should sign both the Purchase Agreement and the Counter
487      Offer.
488
489
490 By signature below, the parties verify that they understand and approve this Purchase Agreement and acknowledge
491 receipt of a signed copy.
492    Signed by:
493    _/s/ Will_                              9/10/2024 | 9:38 PM EDT
494 SELLER'S SIGNATURE                        DATE         SELLER'S SIGNATURE                DATE
495
496 Jason Williams
497 PRINTED                                                PRINTED



Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR) This form is restricted to use by members of IAR. This is a legally binding contract, if not understood seek legal advice.
Form #02. Copyright IAR July 2024



103 Park Ave, Crothersville, IN 47229
(Property Address)
Page 9 of 9   (Purchase Agreement)
COPYRIGHT IAR July 2024
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   Penny Moore



# FSBO/BUILDER COMPENSATION AGREEMENT
## (<u>NOT</u> A ONE-TIME LISTING CONTRACT)

For use only by members of the Indiana Association of REALTORS®

1  This Compensation Agreement is dated __September 10, 2024__, by and between
2  __Berkshire Hathaway HomeService__ ("Broker"), and
3  __Jason Williams__ ("Seller").
4  (Where the word "Broker" appears, it shall mean "Licensee" as provided in I.C.25-34.1-10-6.8.)

5  Seller is the owner of property commonly known as __103 Park Ave__
6  _____, __Crothersville__, Indiana, Zip __47229__
7  (the "Property").

8  Seller is attempting to sell Property without the assistance of a licensed real estate broker.

9  Broker has a client, __Penny Moore__ ("Buyer"),
10 to whom Broker would like to show Seller's Property.

11 If Seller sells Property to Buyer, Seller agrees to pay Broker a commission equal to __Three Point Zero__
12 _____ percent ( __3.000__ %) of the selling price, not less than $ _____ U.S. Dollars.
13

14 If Seller enters into a Purchase Agreement to sell Property to Buyer at any time within __180__ days from the date
15 that Seller signs this Agreement, Seller shall pay the commission to Broker at closing.

16 Unless indicated otherwise in the Purchase Agreement, the undersigned broker shall act as Escrow Agent for Earnest
17 Money.

18 This Agreement does not authorize Broker to show the Property to other prospective buyers other than the Buyer
19 named above, nor obligate the Seller to pay a commission to Broker, except in connection with a sale of the Property
20 to Buyer.

21 Seller acknowledges the following:

22 (1) That Broker's agency relationship with the Buyer has been previously verbally disclosed to the Seller. As a
23     buyer's agent, Broker owes the duties of trust, loyalty, confidentiality, accounting and disclosure to the Buyer.
24 (2) That Broker is promoting solely the interests of the Buyer in this transaction, and any material or confidential
25     information given to the Broker by the Seller will be disclosed to Buyer if in the Buyer's interests.
26 (3) That Seller's payment of the commission to Broker does not create any agency relationship between the Seller
27     and the Broker, except that Broker shall treat Seller honestly.
28 FURTHER CONDITIONS: _____
29 _____
30 _____
31 _____
32

33 Attorney's Fees: Any party to this Agreement who is the prevailing party in any legal action or equitable proceeding
34 against any other party brought under or with relation to the Agreement or transaction shall be additionally entitled to
35 recover court costs and reasonable attorney's fees from the non-prevailing party.

103 Park Ave, Crothersville, IN  47229
(Property Address)
COPYRIGHT IAR 2024
Page of 1 of 2  (FSBO/Builder Compensation Agreement)

Berkshire Hathaway HomeService, 905 E Tipton Seymour IN 47274      Phone: (555)555-5555      Fax:                    Penny Moore
Cat Kick                     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

36  This Agreement may be executed simultaneously or in two or more counterparts, each of which shall be deemed an
37  original, but all of which together shall constitute one and the same instrument. The parties agree that this Agreement
38  may be transmitted between them electronically or digitally. The parties intend that electronically or digitally
39  transmitted signatures constitute original signatures and are binding on the parties. The original documents shall be
40  promptly delivered, if requested.

41  Seller consents to receive communications from Broker via telephone, U.S. mail, email and facsimile at the
42  numbers/addresses provided to Broker unless Seller notifies Broker in writing to the contrary.

43  **Seller acknowledges that Seller has thoroughly read and understands this Agreement and acknowledges**
44  **receipt of same. Seller further acknowledges that this Agreement is binding upon all parties, their heirs,**
45  **administrators, executors, successors and assigns.**

46  *Cat kick*                        RB1000058            *[signature]*                          9/10/2024 | 9:38 PM
47  AGENT                             IN LICENSE #        SELLER'S SIGNATURE                      DATE

48                                                        **Jason Williams**
49  BROKER OR COMPANY                 IN LICENSE #        PRINTED
                                      LC81401047

50
51  ACCEPTED BY: MANAGING BROKER                          SELLER'S SIGNATURE                      DATE

52
53                                                        PRINTED

  Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR). This form is
restricted to use by members of IAR. This is a legally binding contract, if not understood seek legal advice.
Form #32. Copyright IAR 2024   

103 Park Ave, Crothersville, IN 47229
(Property Address)

Page 2 of 2 (FSBO/Builder Compensation Agreement)