**Fill in this information to identify the case:**

Debtor 1    MICHAEL JASON WILLIAMS

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Eastern District of Kentucky

Case number   24-60490-grs

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**
FARM CREDIT SERVICES OF AMERICA, PCA
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

JOSEPH H. MATTINGLY III
Name
P.O. BOX 678 - 104 WEST MAIN STREET
Number   Street
LEBANON     KY     40033
City        State  ZIP Code

Contact phone 270-692-1718

Contact email joe@mattinglylawoffices.com

Where should payments to the creditor be sent? (if different)

FARM CREDIT SERVICES OF AMERICA, PCA
Name
P.O. BOX 209
Number   Street
OMAHA      NE     68103
City        State  ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ - __ __ __ __ - __ __ __ __ - __ __ __ __

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on ___/___/_____
                                                                        MM  / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                    Proof of Claim                       page 1

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

6. Do you have any number you use to identify the debtor?
   ☐ No
   ☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

7. How much is the claim? $ 10,430.69. Does this amount include interest or other charges?
   ☐ No
   ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?
   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
   Limit disclosing information that is entitled to privacy, such as health care information.

   PURCHASAE MONEY LOAN

9. Is all or part of the claim secured?
   ☐ No
   ☑ Yes. The claim is secured by a lien on property.
   
   **Nature of property:**
   ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
   ☐ Motor vehicle
   ☑ Other. Describe: Eby Posum Belly PP Livestock Trailer 4A2LD522483002374

   **Basis for perfection:** Financing Statement filed with KY Secretary of State
   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   Value of property: $ 15,000.00
   Amount of the claim that is secured: $ 10,430.69
   Amount of the claim that is unsecured: $ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

   Amount necessary to cure any default as of the date of the petition: $ _____

   Annual Interest Rate (when case was filed) 6.50 %
   ☑ Fixed
   ☐ Variable

10. Is this claim based on a lease?
    ☑ No
    ☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____

11. Is this claim subject to a right of setoff?
    ☑ No
    ☐ Yes. Identify the property: _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No
☐ Yes. *Check one:*

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  07/03/2024
                  MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name: **JOSEPH H. MATTINGLY III**
First name    Middle name    Last name

Title: COUNSEL FOR FARM CREDIT SERVICES OF AMERICA, PCA

Company: JOSEPH H. MATTINGLY III, PLLC
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: P.O. BOX 678 - 104 WEST MAIN STREET
Number    Street
LEBANON    KY    40033
City    State    ZIP Code

Contact phone  270-692-1718    Email  joe@mattinglylawoffices.com

Official Form 410    Proof of Claim    page 3

# Loan Payoff Calculation as of 5/24/2024

JW Livestock LLC
CIF# 895953

### Account - 3389957 - Trailer: Livestock -

| | |
|---|---|
| Loan Date | 8/18/2022 |
| Maturity Date | 10/1/2025 |
| Rate Type | Fixed |
| Interest Rate | 6.5000% |
| Per Diem | $1.86 |
| Prepayment Restricted | No |
| Prepayment Type | N/A |
| Prepayment Expiration | N/A |

### Payoff Details as of 5/24/2024

| | |
|---|---|
| Principal Amount | $10,325.28 |
| Interest Amount | $102.39 |
| Cash Plus | $0.00 |
| Late Fees | $3.02 |
| Other | $0.00 |
| Payoff Total | $10,430.69 |

*The above balances may not reflect outstanding transactions on your account.*
*For inquiries on these accounts please call 1 (866) 230-4574*

JW Livestock LLC           Printed: 06/18/2024           Page 1 of 1

Case 24-40409-drd   Claim 71-1 Filed 10/28/24 Desc Main Document Page 5 of 15
Case 24-40409-drd   Doc 71-1 Filed 07/28/24 Entered 10/28/24 08:09:42 Page 5 of 15
DocuSign Envelope ID: 4AA89EDB-E436-49FA-8BDF-0DB369F862FF
Proof of Claim   Page 5 of 15

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

FORM 8307 (8-2019)

Customer No: 895953  Account No: 3389957

Date: August 17, 2022



## PROMISSORY NOTE AND LOAN AGREEMENT

For value received, each undersigned Borrower which executes this Promissory Note and Loan Agreement (individually and collectively, together with their respective successors and assigns, "Borrower") jointly and severally promises to pay in U.S. dollars to Farm Credit Services of America, PCA, (together with its successors and assigns, "Lender"), at its office in Omaha, Nebraska, or such other place as Lender may designate, the principal sum of NINETEEN THOUSAND FIVE HUNDRED FORTY, $19,540.00, ("Maximum Principal Balance"), or the unpaid balance of all principal advanced hereunder, plus interest accruing on the outstanding principal balance from time to time.

**SUBJECT TO THE TERMS AND CONDITIONS OF THIS PROMISSORY NOTE AND LOAN AGREEMENT SET FORTH BELOW (collectively the "Note"), THE MAXIMUM PRINCIPAL BALANCE/ADDITIONAL ADVANCES OPTION(S) AVAILABLE IS (ARE) AS FOLLOWS:**

**MAXIMUM PRINCIPAL BALANCE/ADDITIONAL ADVANCES OPTION (THIS DOES NOT CONSTITUTE A COMMITMENT BY LENDER TO MAKE ANY TYPE OF ADVANCE):** Lender, at its option, may advance sums to Borrower up to the Maximum Principal Balance until January 27, 2023 (Final Advancement Date).

**Restrictions on Maximum Principal Balance/Additional Advances:** The right to request and receive funds is not assignable. Lender may determine whether Borrower continues to meet Lender's credit standards at the time of each requested Advance. Lender, in its sole discretion, may decrease the funds available for disbursement following this review.

**Protective Advances:** Lender may make Advances to protect the Collateral for this Note; such Advances may be added to the Maximum Principal Balance stated above and will, at Lender's option, be immediately due and payable and bear interest at the Default Interest Rate from the date Advanced until paid.

**INTEREST RATE OPTION:** Interest will accrue at the "Initial Interest Rate" of 6.500 percent per annum, with interest thereafter at the rate provided in the interest rate option specified below unless the Default Interest Rate described below is in effect.

    **Fixed Interest Rate:** The interest rate is fixed until Maturity Date at the Initial Interest Rate.

**REPAYMENT:** Borrower will repay the loan in installments as follows:

| No. | Each Due | Amount and Type (Each Payment) | | Begin Date | End Date |
|---|---|---|---|---|---|
| 36 | Monthly | $604.58 | Principal & interest | 11/01/2022 | 10/01/2025 |

The amount of the first payment may be larger or smaller than shown above depending on the actual number of days between loan closing and the first payment due date. The actual payment amount of all other payments may vary according to the interest rate then in effect and the outstanding principal balance.

Any Advances made by Lender after the "Begin Date" (as set forth above) may, at Lender's option, result in a reamortization of the remaining principal balance of the loan over the remaining term.

In addition to the installment payments, all Obligations are due in full on the last "End Date" (also referred to as the "Maturity Date") set forth herein.

Payments will be made at the location identified by Lender. Any amounts submitted by Borrower will, at Lender's option, be applied first to the payment of default interest, then to protective Advances, then to any unpaid charges, fees and expenses, then to accrued interest, and finally to principal to the extent of the amount submitted.

**INTEREST ACCRUAL:** Interest under this Note shall be computed on the basis of a 360-day year. The amount of each payment allocated to interest will be based on the actual number of calendar days since the most recent payment and shall be calculated by multiplying the unpaid principal balance of this Note by the per annum interest rate, dividing the product by 360 and multiplying the quotient by the actual number of days elapsed since the most recent payment. Borrower understands that the amount allocated to interest for each payment will vary depending on the actual number of calendar days since the most recent payment.

**LATE CHARGES:** Late charges may be assessed when any amount of a scheduled payment is past due. Late charges are 0.50 percent of amount past due and may be assessed after the payment due date and every 15 days thereafter up to 60 days past the due date. Late charges may be added to your principal balance and interest may be charged thereon

**ADDITIONAL PAYMENTS:** This additional payment provision applies to any payment of principal that exceeds the principal payment specified in the Repayment provisions of this Note, including, but not limited to, any additional payment whether voluntarily or involuntarily made due to an interest rate conversion, a default under the terms and conditions of this Note or security instruments, or acceleration of this Note. Additional payments will not postpone, defer, or alter the amount or due date of any payments required by this Note. The obligation to continuously make scheduled payments remains in force until this Note is paid in full.

**DEFAULT INTEREST RATE:** If an Event of Default occurs, then, at the election of the Lender, all principal, all accrued interest thereon, and all Advances will bear interest at the "Default Interest Rate," as defined below, from the date of election until paid. Any attorney fees (to the extent allowed by law), costs, or expenses incurred and advanced by holder to enforce collection of this Note will be added to the principal and bear interest at the Default Interest Rate from the date of Advance until paid. At Lender's option, any condition of default may result in interest being charged on all principal, all accrued interest thereon, and all Advances at the default rate without declaring the loan in default.

**Fixed Rate:** The Default Interest Rate will be a rate of interest at 4.00 percent per annum higher than the rate of interest in effect at the time Lender declares a default or otherwise imposes the Default Interest Rate.

**ASSUMPTIONS:** This Note is assumable only with the prior written consent of the Lender.

**WAIVERS AND OTHER PROVISIONS:** The Borrower and any endorsers, sureties, and Guarantors of this Note hereby severally waive presentment, demand, notice of nonpayment, protest, notice of protest, and due diligence in enforcing the payment hereof and consent that the time of payment may be extended from time to time by holder without notice. Each Borrower hereby binds their separate estate, existing now or hereafter acquired, for the payment of this Note and agrees that any release of any Collateral or of any person liable hereon will not operate as a release of any other Borrower, endorser, surety, or Guarantor. Borrower acknowledges that, following Borrower's execution of this Note, the Note may be pledged or assigned by Lender to AgriBank, FCB. In consideration of the Advances of any credit by AgriBank, FCB, to Lender in reliance upon this Note, the Borrower, sureties,

DocuSign Envelope ID: 4AA89EDB-E436-49FA-8BDF-0D6... THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

and Guarantors of this Note hereby severally waive any and all defenses or right of offset which they may have, individually or collectively, against Lender and its successors or assigns under this Note.

**LOAN AGREEMENT**: This Note includes the provisions in the Loan Agreement set forth below or attached hereto, any of the Loan Documents, and any addenda or amendments, restatements, modifications or other supplements of such documents. The definitions set forth in the Loan Agreement shall apply to the provisions of this Note as well as to the Loan Agreement.

**COLLATERAL**: This Note is secured by the Collateral encumbered by security agreement(s) and other Loan Documents, including any addenda or amendments, restatements, modifications or other supplements of any of the foregoing.

## LOAN AGREEMENT

### Defined Terms.

**Advance**: Any disbursement of funds made to Borrower or on Borrower's behalf pursuant to the terms of this Note or any Loan Documents.

**Borrower**: Collectively, any maker or co-maker, signer or co-signer of this Note.

**Collateral**: All Property and assets granted as security for this Note or other Obligations, whether granted directly or indirectly, regardless of when granted, or pursuant to any Loan Document.

**Event of Default**: As set forth in Section 5 below of this Note.

**Guarantor**: Any guarantor, surety, or accommodation party with respect to the Obligations, whether pursuant to a Guaranty of Payment or other agreement.

**Lender**: As first set forth above.

**Loan Documents**: This Note and any and all other notes, credit agreements, guaranty agreements, security agreements, UCC financing statements, lease agreements, mortgages, deeds of trust, any other document granting a lien or security interest to secure the Obligations, and any other document or instrument executed in connection with or evidencing any Obligation (including any amendment, restatement or modification thereto).

**Material Adverse Effect**: Any event, occurrence or circumstance that has a negative effect on: (i) the business, operations, property, liabilities, condition (financial or otherwise) or prospects of Borrower, taken as a whole; or (ii) the validity or enforcement of any of the Loan Documents or the rights or remedies of Lender or holder of this Note hereunder; or (iii) the ability of Borrower, taken as a whole, to perform their obligations under any of the Loan Documents.

**Obligations**: Includes, without limitation, all credit including principal and any advances, interest and other amounts due to Lender under the Loan Documents whether or not this Note is specifically referred to in the security instrument(s), including without limitation, fees, costs, and expenses, together with all renewals, extensions, or refinancing of same and any future and additional loans or advances made at Lender's option to or on behalf of Borrower by Lender or under any other Loan Document for any purpose whether related or unrelated to the purpose of the original credit, including advances for the protection of the Collateral, all attorney fees, costs and expenses incurred by Lender to the extent permitted by law in the collection of any loan or in the enforcement or preservation of the rights of Lender in and to the Collateral, regardless of whether grantor is obligated thereon as a maker or co-maker, signer or co-signer, or as a guarantor, endorser, surety or other accommodation party.

**Personal Property**: All equipment, fixtures and other assets not considered real property, including such assets that is now or hereafter attached or affixed to real property and not considered a fixture; together with all accessions, parts and additions to, all replacements of and all substitutions for any of such property.

**Property**: The Personal Property, including without limitation all insurance proceeds and refunds of insurance premiums.

### The Agreement.

1. **Agency/Authorization.** Each Borrower appoints every other Borrower as his, her or its agent for purposes of this Note or any other Obligations. Borrower acknowledges that Lender may conduct transactions with any Borrower as if Lender were conducting transactions with all Borrowers. Any Borrower or any persons authorized in writing by a Borrower are hereby authorized to view, request, accept, receive, and receipt for all or any portion of the proceeds of the Note or of any refinance, conversion, extension, additional loan, reamortization, or revision of the same and to execute and approve all agreements required by Lender in the disbursement of loan proceeds.

Any Borrower or any persons authorized in writing by a Borrower may initiate/request either by phone, in person, in writing, via online instructions or other request, disbursements or Advances in the form of check, wire, electronic, or other type of transfer to an account specified by requester. Lender may also disburse or retain from the initial loan proceeds or any subsequent Advance of proceeds any amount required to: (a) purchase stock as set forth herein; (b) pay any fees or charges assessed in connection with any loan, loan servicing action, or other service, including optional financial services provided by or through Lender; (c) obtain any evidence of title to any Property which secures the loan(s); (d) satisfy any loan closing or title requirements necessary to clear title or obtain a first lien on Collateral; (e) pay any letters of credit issued for or on behalf of Borrower; (f) pay any sums Lender determines necessary to protect Lender's interests in any Collateral security pursuant to this Note or any other Loan Documents, including, but not limited to, premiums for hazard insurance, flood insurance, mortgage insurance, or any other insurance required by Lender under this Note or any other Loan Documents, or any sums payable by Borrower to Lender in lieu of the payment of such premiums; and (g) otherwise close the loan.

Notwithstanding anything to the contrary above, Borrower represents and warrants to Lender that a valid and enforceable written purchase agreement has been signed by and between the owner of the Collateral and the seller of such Collateral and hereby authorizes Lender to disburse loan proceeds via check, draft, wire transfer or ACH (Automatic Clearing House) directly to the seller under the written purchase agreement, manufacturer, dealer, broker, or any other third party that shall sell, supply or otherwise provide either the Collateral that secures this Note or any ancillary services related to delivery or installation of said Collateral.

2. **Stock Investment.** Borrower acknowledges that ownership of issued stock may be required in order to qualify for a loan from Lender. Stock purchase, ownership, any conversion, or retirement shall be according to the terms, conditions and designations outlined in a stock purchase agreement between the Borrower and Lender and otherwise prescribed in Lender's Capitalization Bylaws, the Farm Credit Act of 1971, as amended, and Farm Credit Administration regulations

3. **Financial Information.** Borrower shall provide to Lender on request information on Borrower's financial condition, which shall be in a format acceptable to Lender. Lender may verify all information Borrower discloses by any means Lender may determine appropriate, including, but not limited to, credit, employment, and income records of Borrower and any partners, members, shareholders, owners and Guarantors of Borrower.

4. **Cross Collateralization/Cross Default.** Unless otherwise specifically limited by the terms and conditions of the security instrument(s), all real property or Personal Property given as Collateral for this loan secures all Obligations and other indebtedness owed by Borrower to Lender now or in the future. Declaration of default under any loan executed by any Borrower to Farm Credit Services of America, FLCA, or Farm Credit Services of America, PCA, may, at Lender's option, cause all loans executed by any Borrower to Farm Credit Services of America, FLCA, or Farm Credit Services of America, PCA, including any other extensions of credits that Lender may have an interest in, to be in default, charged interest at the default rate stated in the note(s), and declared to be immediately due and payable (including all sums loaned or Advanced and all accrued interest thereon).

---

**5. Events of Default.** Each of the following shall constitute an Event of Default:
**(a)** The failure to make any payment when due under any Loan Document or other Obligation. **(b)** Providing false, misleading or incomplete information to Lender. **(c)** The failure to pay any liens, judgments, assessments, taxes, rents, fees, or charges or maintain any insurance on Property, buildings, fixtures, attachments, or improvements located on any Property. **(d)** Use loan proceeds for purposes not designated and approved in the loan application or Loan Documents. **(e)** Any breach or material misrepresentation of any term, agreement, covenant, condition, certification, representation or warranty in any Loan Documents, loan application, note, mortgage, deed of trust, security agreement, loan agreement or otherwise default under any such documents. **(f)** Sell, transfer, or convey any of the Collateral without prior written consent of Lender. **(g)** Any party to any Loan Documents, other than Lender, being adjudicated insolvent or bankrupt, cease to be able or admit in writing the inability to pay debts as they mature, make a general assignment for the benefit of or enter into any composition or arrangement with creditors. **(h)** Any party to any Loan Documents, other than Lender, applying for or consenting to the appointment of a receiver, trustee or liquidator of any part of their part property or permitting or allowing such appointment without authorization of Lender. **(i)** Any party to any Loan Documents, other than Lender, authorizing or filing a voluntary petition for relief in bankruptcy or apply for or consent to the application of any bankruptcy, reorganization in bankruptcy, arrangement, readjustment of debt, insolvency, dissolution, moratorium or other similar law. **(j)** Any party to any Loan Documents, other than Lender, permitting or allowing an involuntary petition for relief in bankruptcy, reorganization in bankruptcy, arrangement, readjustment of debt, insolvency, dissolution, moratorium or other similar proceedings to be instituted without authorization, application or consent and continue without dismissal for a period of sixty (60) days. **(k)** Borrower suffering a Material Adverse Effect in Borrower's business or financial condition, or if there is a material impairment of the prospect of repayment of any portion of the Obligations or there is a material impairment of the value or the priority of Lender's security interest in the Collateral, which changes causes Lender to deem itself insecure. **(l)** Death (if Borrower or any Guarantor is a natural person) or terminating or dissolving (if Borrower or any Guarantor is a corporation, partnership, limited liability company or other legal entity). **(m)** Any provision of any of the Loan Documents shall for any reason cease to be legal, valid, and binding on Borrower or Guarantor, or Borrower or Guarantor shall so state in writing.

**6. Remedies.** Upon the occurrence of an Event of Default, Lender, at its option, subject to any requirements under the Farm Credit Act or other applicable federal or state law, may exercise one or more of the following rights and remedies, in addition to any other rights or remedies permitted by law: **(a)** Declare all Obligations immediately due and payable and the whole will bear interest at the default rate as provided in the Loan Documents. **(b)** Cease making Advances or otherwise extending additional credit to or for the account of Borrower under this Note or any other agreement now existing or hereafter entered into between Borrower and Lender. **(c)** Reduce or modify the Maximum Principal Balance or modify the terms and conditions upon which Lender may be willing to consider making Advances. **(d)** Terminate this Note and any future obligation of Lender without affecting Borrower's Obligations to Lender or Lender's rights and remedies under this Note or under any other document, instrument or agreement. **(e)** Seek immediate appointment of a receiver by a court of law to take immediate possession of any Property and all rents, issues, crops, profits and income thereof, without regard to the value of the Property, or the sufficiency thereof to discharge the Obligations or any costs, fees, or expenses incurred in collection of the Obligations. Such receiver may be immediately appointed by any court of competent jurisdiction upon ex parte application, notice being hereby expressly waived and shall serve without bond if the law allows. The receiver will apply all rents, issues, crops, profits, and income of the Property to keep the same in good repair and condition, pay all taxes, rents, fees, charges and assessments, pay insurance premiums necessary to keep the Property insured, pay the expense of the receivership and attorney's fees incurred by the receiver, and apply the net proceeds to the payment of the Obligations. Such receiver will have all the other usual powers of receivers authorized by law and as the court may direct. **(f)** In the event there is a failure to pay any liens, judgments, assessments, taxes, rents, fees, or charges or maintain insurance on any Property, buildings, fixtures, attachments, or improvements as provided in the Loan Documents, Lender, at its option, may make such payments or provide such insurance, maintenance, or repairs and any amounts paid therefor will become part of the principal indebtedness under this Note, be immediately due and payable by Borrower and bear interest at the default rate provided in the Loan Documents from the date of payment until paid to Lender. The Advancement by Lender of any such amounts will in no manner limit the rights of Lender to declare that an Event of Default has occurred or exercise any of Lender's other rights and remedies. **(g)** In the event Lender is a party to any litigation affecting the Obligations, including any action by Lender to enforce any of the Loan Documents or any suit in which Lender is named a defendant (including eminent domain and bankruptcy proceedings), Lender may incur expenses and Advance payments for abstract fees, attorney's fees (to the extent allowed by law), costs, expenses, appraisal fees, and other charges and any amounts so Advanced will become part of the principal indebtedness under this Note, be immediately due and payable and bear interest at the default rate provided in the Loan Documents from the date of Advance until paid to Lender.

Lender's failure at any time to require strict performance by Borrower of any provision of the loan(s) shall not constitute a waiver of or otherwise diminish Lender's rights hereunder. No waiver by Lender of any breach or default shall constitute a waiver of any other breach or default by Borrower or a waiver of any of Lender's rights hereunder.

**7. Environmental Declaration.** Borrower hereby agrees (1) that all known sources of existing or potential environmental contamination on or near any property owned or operated by Borrower have been fully disclosed to Lender; (2) to comply fully with all applicable environmental laws and promptly inform Lender of any environmental contamination discovered on or near any property Borrower owns or operates; and (3) to promptly notify Lender if Borrower or property owned or operated by Borrower is or may be subject to investigation by any governmental agency for a violation of environmental laws, or is or may be subject to a lien for cleanup of environmental hazards. Further, Borrower shall hold Lender harmless from any liability for environmental waste or contamination on any property owned or operated by Borrower or liability imposed as a consequence of Borrower's activities and shall indemnify Lender against all claims, losses, liabilities, and expenses incurred by Lender as a result thereof. This covenant will survive cancellation or termination of this Note.

**8. Set Off.** Any voluntary Advance conditional payments made by Borrower to Lender or any funds held by Lender or any affiliate of Lender in any deposit account on behalf of Borrower are subject to applicable policies and procedures as may be adopted from time to time. Borrower hereby grants to Lender a security interest in all of the above funds and deposit accounts and Lender shall have and be deemed to have, without notice to Borrower, the immediate right of set-off and may exercise the right to apply these funds against any loans or other obligations Borrower may owe Lender.

**9. Legal Authority/Compliance with Laws.** If Borrower is a legal entity, (1) Borrower is, and shall continue to be, duly organized, validly existing and/or legally qualified to do business under the laws of the states in which Borrower operates, in compliance with federal, state and local laws or regulations, and have legal authority in such states to conduct business operations and to own agricultural real estate; and, no change has been made in the name, ownership, control, relationship, legal status or organizational and/or formation documents of Borrower since the time any such information was last provided to Lender; and (2) Borrower has all requisite power and authority to enter into and perform this Note and the other Loan Documents and to incur the Obligations herein provided for, and has taken all proper and necessary action to authorize the execution, delivery and performance of this Note and the other Loan Documents.

**10. Rights in Third Parties.** No loan approved hereunder confers any contractual rights or benefits on any third party.

**11. No Commitment.** Nothing contained in this or any other document or instrument executed in connection with the Obligations will be construed to obligate Lender to make any loan, refinance, Advance, revision, or disbursement for any purpose. All Advances and disbursements are at the sole option of Lender.

**12. Disclosure.** Borrower hereby certifies that: (1) Borrower has received a copy of Lender's "Customer Information and Disclosure Handbook" (2) Borrower has received a copy of the "Applicant Disclosure and Authorization," and Borrower agrees to the terms therein, and (3) ALL the information provided at any time by Borrower or on Borrower's behalf to Lender is true, accurate, and correct. Borrower may designate in writing to Lender the person to receive future effective interest rate disclosures. Unless so designated, Lender may provide such disclosures to any Borrower or Guarantor.

**13. Consent to Electronic Communications.** Borrower agrees that any "Communications" (as defined herein) directed to Borrower by Lender, Lender's parent association, or any subsidiary, affiliate, or agent of Lender or Lender's parent association (collectively, the "Association"), may be provided in electronic form or transmitted by electronic means. As used herein, "Communications" means all notices, disclosures, documents, or other communications given by the Association to Borrower, including, without limitation, all shareholder communications and any disclosures, notices, or communications relating to this Note or any transaction between Borrower and the Association, but expressly excluding any notice required by applicable law to be provided in paper form. Borrower acknowledges that electronic Communications entail risks (including the risk of interception by a third party) and Borrower hereby releases the Association from all liability relating to the electronic provision or transmission of any and all Communications. Borrower agrees to provide Lender upon request with the e-mail address or addresses of Borrower and to notify Lender within ten (10) days if Borrower changes its e-mail address or addresses. Any Communication sent by e-mail will be deemed received when sent to the last e-mail

Case 24-60490-grs    Claim 71-1    Filed 10/28/24    Desc Main Document    Page 8 of 15
DocuSign Envelope ID: 4AA89EDB-E436-49FA-8BDF-0D03609F962F
Proof of Claim    Page 8 of 15

address or addresses of Borrower known by Lender. Any Communication digitally published by the Association on an Internet website will be deemed received when the Association has both published the Communication and notified Borrower at its last e-mail address or addresses known by Lender that the Communication has been published. Transmission of this Note and any Loan Document as an "electronic record" containing Borrower's "electronic signature," as those terms are defined under applicable federal and state laws, or facsimile transmission of any Loan Document containing a facsimile of Borrower's signature, shall be as effective, enforceable and valid as if a paper version of such Loan Document were delivered containing such original written signature. The parties intend that the electronic method used as provided herein reliably establishes the identity of Lender as a holder in due course and agree that each Loan Document produced by such electronic method shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Loan Document and shall be effective as a transferable record; and to the extent, if any, that any Document constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Loan Document may be created through the transfer or possession of any counterpart or copy thereof, other than the Loan Document produced by such electronic method. Borrower agrees not to raise as a defense to the enforcement of any Loan Document that Borrower executed such Loan Document by electronic or digital means or used facsimile or other electronic means to transmit its signature on such Loan Document. At any time, Borrower may request a paper copy of any Loan Document or other record Lender made available to Borrower electronically. Borrower may revoke the consent to receive electronic Communications contained in this paragraph by sending thirty (30) days' prior written notice of such revocation, signed by Borrower, to Lender by certified mail, return receipt requested. In the event of any conflict between the terms of this paragraph and the terms of any other agreement entered into by Borrower and the Association regarding electronic signatures or communications, then as to such other agreement, the terms of such other agreement shall control as to such electronic signatures or communications.

14. **Headings.** Paragraph headings are reference purposes only and shall not be considered a term or condition of this Note.

15. **Designation of Payer of Record.** JW Livestock LLC is identified as the primary borrower/payer of record on this loan on behalf of all Borrowers to accept and receive tax notices and any dividends, patronage or other distributions declared under the Bylaws of Lender. This designation will remain in effect until Lender is notified in writing by all liable parties of any change.

16. **Legal Fees, Etc.** If Lender has to pursue collection of the Obligations or respond to a subpoena with the assistance of an attorney or other professional services, Borrower shall pay to Lender all attorney or other professional fees incurred, court costs and other expenses as allowed by applicable law. All such fees and expenses shall be immediately due and payable and shall bear interest at the rate then in effect under this Note or other Obligation.

17. **Governing Law.** This Note shall be governed by, and construed in accordance with, federal laws to the extent applicable, and otherwise by the laws of the State of Nebraska, except to the extent that the law of any other jurisdiction applies as to the perfection or enforcement of Lender's security interest in or lien on any Property and except to the extent expressly provided to the contrary in any Loan Document.

18. **Severability.** The provisions contained in this Note will be deemed to be severable; in the event that any portion of this Note is determined to be void or unenforceable, that determination will not affect the validity of the remaining portions of this Note.

19. **Notices.** All notices, requests and demands to or upon the respective parties hereto, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered by hand, or three days after being deposited in the mail, postage prepaid, or, in the case of delivery by a nationally recognized overnight courier, when received, addressed to one or more of the individuals executing this Note on behalf of such party at the addresses set forth below or to such other address as such party may designate for itself by like notice.

JW Livestock LLC, 145 Shelby Brooks Ln, London, KY 40744

Michael Jason Williams, 5460 Slate Lick Rd, London, KY 40741

20. **Further Assurances.** Borrower shall promptly provide and/or execute and deliver to Lender such further instruments, documents, agreements, certificates, addendums, amendments or resolutions in form and substance satisfactory to Lender that Lender may require to effectuate the provisions of this Note.

21. **Time is of the Essence.** Time is of the essence in the performance of this Note.

22. **Binding Effect.** The terms of this Note shall bind and benefit the heirs, legal representatives, successors, and permitted assigns of the parties; provided, however, that Borrower may not assign this Note, or any Advances made hereunder, or assign or delegate any of its rights or obligations, without the prior written consent of Lender.

23. **Counterparts.** This Note may be executed in any number of counterparts and by either party on separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

24. **Integration; Amendments.** This Note constitutes the entire, complete, and final expression of the Note and understandings between Borrower and Lender, and supersedes all prior agreements and understandings related to the subject matter hereof. This Note may not be effectively amended, changed, altered or modified, except in writing executed by all parties. To the extent the provisions contained in this Note are inconsistent with those contained in any other Loan Documents, the terms and provisions contained herein shall control. Otherwise, such provisions shall be considered cumulative.

**Taxpayer Identification Number Certification:** The Internal Revenue Services (IRS) does not require your consent to any provision of this document other than the following certification required to avoid backup withholding. Under penalties of perjury, I certify that (1) the Taxpayer Identification Number shown herein is correct (2) I am not subject to backup withholding either because I am exempt, have not been notified that I am subject to backup withholding due to failure of reporting interest or dividends, or the Internal Revenues Service has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. person (including U.S. resident alien.

**Certification Instructions.** You must cross out item 2 if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement account (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN.

JW Livestock LLC (46-4882760); Michael Jason Williams (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)

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS NOTE SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THE WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THE NOTE ONLY BY ANOTHER WRITTEN AGREEMENT. THIS NOTIFICATION AFFECTS AND APPLIES TO THIS NOTE AND ALL OTHER CREDIT AGREEMENTS OR LOAN DOCUMENTS NOW IN EFFECT WITH FARM CREDIT SERVICES OF AMERICA.**

**AUTHORIZATION FOR RELEASE OF INFORMATION:**

Case 24-60490-grs Claim 71-1 Filed 10/28/24 Desc Main Document Page 9 of 15
DocuSign Envelope ID: 4AA89EDB-E436-49FA-8BDF-0D668689F5625F
Proof of Claim
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

The undersigned Borrower authorizes and gives consent to Lender to provide to any Guarantor the current outstanding balance and payment status on all Obligations of the Borrower guaranteed by the requesting Guarantor, and to any collateral owner for the current total outstanding balance and payment status on all Obligations of the Borrower that are wholly or partially secured by Collateral pledged by the requesting collateral owner.

WAIVER OF JURY TRIAL. BORROWER HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS NOTE OR ANY RELATED LOAN DOCUMENT.

JW Livestock LLC, A Limited Liability Company

By: *[signature]*
Michael Jason Williams, President

*[signature]*
Michael Jason Williams

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net



FORM 8306 (11-2018)

# AgDirect.
## SECURITY AGREEMENT

**Customer No:** 895953                                         Date: August 17, 2022

**Debtor(s)/Collateral Owner(s) (collectively referred to herein as "Debtor"):**

JW Livestock LLC, a Limited Liability Company
145 Shelby Brooks Ln
London, KY 40744

Michael Jason Williams
5460 Slate Lick Rd
London, KY 40741

**Lender:**      Farm Credit Services of America, PCA
                 5015 S 118th St, PO Box 2409
                 Omaha, Nebraska 68103-2409

**Defined Terms:**

**Borrower:** JW Livestock LLC, Michael Jason Williams together with any other maker or co-maker, signer or co-signer of any Loan Document representing any Obligations secured by this Security Agreement.

**Collateral:** As set forth below.

**Debtor:** As set forth above.

**Guarantor:** Anyone signing as a guarantor, endorser, surety or other accommodation party.

**Lender:** As set forth above.

**Loan Documents:** Any and all notes, credit agreements, security agreements, UCC financing statements, lease agreements, mortgages, deeds of trust, any other document granting a lien to secure the Obligations, and any other document or instrument executed in connection with or evidencing any Obligations (including any amendment, restatement or modification thereto).

**Obligations:** Includes, without limitation, all credit including principal and any advances, interest and other amounts due to Lender under the Loan Documents whether or not this security agreement is specifically referred to in the evidence of debt, including without limitation, fees, costs, and expenses, together with all renewals, extensions, or refinancing of same and any future and additional loans or advances made at Lender's option to or on behalf of Borrower by Lender or under any other Loan Document for any purpose whether related or unrelated to the purpose of the original credit, including advances for the protection of the Collateral, all attorney fees, costs and expenses incurred by Lender to the extent permitted by law in the collection of any loan or in the enforcement or preservation of the rights of Lender in and to the Collateral, regardless of whether Debtor is obligated thereon as a maker or co-maker, signer or co-signer, or as a guarantor, endorser, surety or other accommodation party.

Debtor, to secure payment and performance of the OBLIGATIONS described herein, hereby grants to Lender, as the secured party, a security interest in the following property wherever located in which Debtor has or claims an interest, and in all increases, additions, accessions, improvements, attachments and accessories thereto and substitutions therefor now owned or hereafter acquired, or held on consignment, and all operating manuals, service records, maintenance logs and warranties applicable thereto including all proceeds and products thereof (Collateral):

**Equipment** *(specifically described as):*

| Make | Model | Description | Serial No. |
|------|-------|-------------|------------|
| Eby  | POSSUM BELLY PP | Trailer: Livestock - Semi | 4A2LD522483002374 |

**Products and Proceeds.** All products and proceeds of any of the above.

Debtor agrees that if any Collateral is acquired with the proceeds of the loan(s), Lender may disburse such proceeds directly to the seller of the Collateral.

**OBLIGATIONS SECURED:** It is understood and agreed between Debtor and Lender that the Collateral in which a security interest is granted by this Security Agreement is given to secure the repayment in full of all Obligations, regardless of whether Debtor is obligated thereon as a Borrower, or a Guarantor, and all future and additional Obligations, which may be made by Lender, at its option, at the request of, and to or for the account of Debtor, any Borrower obligated under the Loan Documents or any of them, for any purpose, plus interest thereon, all payable according to the terms of the Loan Documents. Debtor shall pay all amounts payable when due as provided for in the Loan Documents creating the Obligations secured by this Security Agreement.

Debtor agrees that all prior security agreements, security interests and liens shall continue in full force and effect.

DEBTOR AGREES THAT UNLESS IT IS EXPRESSLY REQUIRED BY A SEPARATE EXPRESS WRITTEN AGREEMENT EXECUTED BY LENDER THAT LENDER IS NOT OBLIGATED TO MAKE FUTURE OR ADDITIONAL LOANS OR ADVANCES TO DEBTOR AND NO SUCH OBLIGATION SHALL BE ESTABLISHED BY COURSE OF DEALING.

**THIS IS A CONTINUING SECURITY AGREEMENT AND DEBTOR WARRANTS AND COVENANTS THAT:**

1. At the request of Lender, Debtor will deliver to Lender a written list of all buyers, commission merchants, and selling agents (including addresses and phone numbers) to or through whom Debtor) may sell any farm products as defined under the Federal Food Security Act of 1985 (FFSA). Lender is hereby authorized to give written or oral notice to any person of its security interest as required or permitted under the Uniform Commercial Code (UCC), the FFSA, or other applicable law. Lender is further authorized to instruct the recipient of such notice to issue all proceeds from the sale of the Collateral directly to Lender or jointly to Debtor and Lender whether or not the Obligations are in default. Lender may disclose the Social Security or taxpayer identification number of Debtor, as part of any such notice, together with such other information as must or may be included for an effective notice under law.

DocuSign Envelope ID: 4AA89EDB-E436-49FA-8BDF-0DC368955628

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

2. Debtor will not sell, transfer, lease, rent or dispose of the Collateral without applying all proceeds of such transaction to payment of the Obligations secured hereby within 10 days after the transaction. Debtor will not lease or rent the Collateral without the Lender's express written permission. Upon default, the Lender's express written permission shall be required before the sale, transfer, lease, rental or disposal of any Collateral. Debtor will not take or attempt to take the Collateral from the contiguous United States without the prior written consent of Lender. Upon request Debtor will provide Lender with a current list of all Collateral and its location. Lender may at any reasonable time enter upon any property where the Collateral is located to examine and inspect the same.

3. Except for the security interest granted hereby, Debtor is, or will be, the owner of the Collateral free from any adverse lien, security interest, or encumbrance claim or ownership interest. Debtor will defend the Collateral against all claims and demands of all persons at any time and will not permit or allow any adverse lien, security interest, or encumbrance whatsoever upon the Collateral and will not permit the same to be attached or replevined.

4. The Collateral is in good condition and Debtor will, at their expense, keep the same in good condition and replace and repair all parts of the Collateral as may be broken, worn out, or damaged, without allowing any lien to be created thereon. Debtor will pay all taxes, assessments, and liens of every nature which may be levied or assessed against the Collateral and will at their expense keep the Collateral insured with a company satisfactory to Lender against all appropriate loss, with loss payable to Lender, and will on demand furnish said policies or furnish proof of insurance to Lender. Such insurance will be in an amount at least equal to the lesser of the loan balance(s), the actual cash value of the Collateral, or the replacement cost of the Collateral, and will at a minimum, cover losses caused by fire, lightning, explosion, aircraft, vehicles, vandalism, smoke, windstorm, and hail. Debtor will obtain and keep any required flood insurance in force to cover losses by flood as required by Lender or by the National Flood Insurance Act of 1968, as amended, or by regulations implementing the same. Debtor further agrees that Lender is not and will not be liable for any failure by Debtor or by any insurer, for whatever reason, to obtain and keep this insurance in force. All proceeds of any insurance will be held by Lender as additional collateral and at the option of Lender may be used to pay for reconstruction, repair, or replacement of the Collateral, or applied to payment of the Obligations. At its option, Lender may procure such insurance, discharge taxes, liens or security interests, or other encumbrances at any time levied or placed on the Collateral and may pay for the repair of any damage or injury to or for the preservation and maintenance of the Collateral. The amount of any such payments will be added to the Obligations secured hereby and will bear default interest as provided in the note(s) from the date of payment until paid. Debtor will not use the Collateral in violation of any applicable statute, regulation, or ordinance and, if motor vehicles are Collateral, the same will not be rented or used in rental services or in any speed or endurance contest.

5. Debtor certifies that Debtor is, and shall continue to be, duly organized, validly existing and/or legally qualified to do business under the laws of the states in which Debtor operates, in compliance with federal, state and local laws or regulations, and have legal authority in such states to conduct Debtor's business operations and to own agricultural real estate. No change has been made in the name, ownership, control, relationship, legal status or organizational and/or formation documents of any Debtor since the time any such information was last provided to Lender.

The Debtor shall give Lender at least thirty (30) days' notice before changing its residence its chief executive office or state of incorporation or organization. The Debtor will notify Lender in writing prior to any change in the location of any Collateral, including the books and records. The Debtor will notify Lender in writing prior to any change in the Debtor's name, identity or business structure.

6. Authorization to File Financing Statements. Debtor hereby irrevocably authorizes Lender at any time and from time to time to file in any filing office in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto that (a) indicate and describe the Collateral including, but not limited to, descriptions of the Collateral as all assets of Debtor, or words of similar effect, and (b) provide any other information required by Part 5 of Article 9 of the Uniform Commercial Code of the State, or such other jurisdiction, for the sufficiency or filing office acceptance of any financing statement or amendment, including (i) whether Debtor is an organization, the type of organization and any organizational identification number issued to Debtor and (ii) in the case of a financing statement filed as a fixture filing or indicating Collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the Collateral relates. Debtor agrees to furnish any such information to Lender promptly upon Lender's request. In addition, Debtor hereby authorizes Lender to file all effective financing statements pursuant to 7 U.S.C. Section 1631, and amendments to effective financing statements, describing the Collateral in any offices as Lender, in its sole discretion, may determine If requested by Lender, Debtor will provide Lender with a list of the buyers, commission merchants and selling agents to or through whom Debtor may sell farm products and a list of all farms, elevators, warehousemen or others where Debtor stores farm products. Debtor authorizes Lender to notify all such buyers, commission merchants, selling agents, farms, elevators, warehousemen or any other person, of Lender's security interest in Debtor's farm products unless prohibited by law. Debtor also ratifies its authorization for Lender to have filed in any Uniform Commercial Code jurisdiction any like initial financing statements or amendments thereto if filed prior to the date hereof.

Debtor will execute such financing statement(s) or effective financing statement(s), including amendments thereto or amendments to this security agreement, pursuant to the UCC or FFSA. Lender is hereby specifically authorized to file a carbon, photographic, electronic, digital, or other reproduction of this security agreement, or of any financing statement, as a financing statement. Debtor further agrees that this security agreement shall serve as a financing statement and hereby specifically authorize Lender to file an electronic financing statement covering the above described collateral with any county or state office under any filing or central filing system without Debtor's physical execution of a separate or computer generated financing statement. And further, that wherever and whenever available and allowed by law, Lender is authorized to file electronically all documents allowed by or required by the Uniform Commercial Code, the Federal Food Security Act, or other applicable law, including but not limited to financing statements, effective financing statements, and continuations, amendments, assignments, or terminations thereof, WITHOUT the physical signature of Debtor, and/or this authorization shall be deemed a digital signature, and/or this authorization shall be deemed a limited power of attorney appointing Lender as Debtor's agent and attorney-in-fact for the express purpose of signing, executing and filing the aforesaid documents on Debtor's behalf. Debtor further authorizes Lender, and hereby grant Lender a power of attorney (which is coupled with an interest), to execute and file applications for certificates of title or similar documents, as Debtor's agent and attorney-in-fact, all in such form and substance as Lender may determine. Debtor will pay the cost of any filing in all public offices Lender deems necessary.  If the Collateral is attached to real estate or is crops or oil, gas or minerals to be extracted, or timber to be cut, Debtor will furnish Lender with disclaimers or subordination agreements signed by all persons having an interest in the real estate, disclaiming or subordinating any interest in the Collateral which is or may be prior to the interest of Lender.

7. Lender is authorized to assign or negotiate the security interest evidenced by this security agreement and the secured obligation without notice to Debtor, its assignees or transferees.

8. Neither the extension of time for payment, nor the acceptance of a partial payment, nor the release of any Collateral or proceeds of any Collateral, nor the waiver, or failure to enforce strict performance of any covenant, promise, term, or condition contained herein or, in any obligation secured will operate as a waiver of the right to thereafter require that the terms thereof be strictly performed. None of the above actions will operate as a discharge of the liability of any other party(ies) to such instrument(s). The taking of this security agreement will not waive or impair any other security Lender may have or hereafter acquire for the payment of the Obligations, nor will the taking of additional security waive or impair this security agreement. Lender may resort to any security in any order it may deem proper and, Lender will retain its right of setoff against Debtor. All Lender's rights and remedies will be cumulative and may be exercised singularly or concurrently and in any order.

9. Debtor will be in default under this security agreement upon failure of Debtor and/or any Borrower to pay any of the Obligations when and as due, to comply with any promise, covenant, term, or condition contained herein, in any other Loan Document. All attorney fees, costs, and expenses incurred by Lender in connection with the enforcement will be added to the Obligations secured hereby and will bear default interest as provided in the Obligations secured from the date of payment.

10. Until default Debtor may have possession of the Collateral and use it in any lawful manner not inconsistent with this security agreement or any policy of insurance. Upon default Lender will have the immediate right to possession of the Collateral. Lender may enter upon the premises where the Collateral is located, take possession of, repair, improve, use, operate or process Collateral for sale. If any part of the Collateral is accounts

Case 24-40490-jrs Claim 1-1 Filed 07/03/24 Desc Main Document Page 12 of 15
DocuSign Envelope ID: 4AA89EDB-E436-49FA-8BDF-0D63689F563B
Proof of Claim
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

receivable, Lender may notify at any time the account debtor to make payment thereon directly to Lender and may take control of the cash and noncash proceeds of any such accounts.

11. Lender may at any reasonable time enter upon any property where the Collateral is located to examine and inspect the same and to examine the books, accounts and other records of Borrower and to copy or take abstracts therefrom and to discuss the affairs, finances, loans and accounts of Borrower with Borrower's representatives. Debtor agrees any such inspection is solely for the Lender's benefit and use, and that Lender shall not be required to disclose the results of any inspections to Debtor for any reason, whether or not Lender has done so on any other occasions unless Lender expressly agrees to do so in a separate writing. Debtor is responsible for monitoring, preserving and inspecting the Collateral independently of Lender, and Lender makes no representation, statement or warranty regarding the accuracy of any inspection, reports or statements related to the Collateral's condition, quantity, or quality of any nature, and Debtors agree they shall not rely upon statements related thereto made by any representatives of Lender.

**LENDER'S RIGHTS AND REMEDIES:**

12. Upon default, or at any time it deems itself insecure, Lender may declare all Obligations secured hereby immediately due and payable and the same will bear interest at the default rate as provided in the note(s) or other evidence of indebtedness. In addition to all other rights and remedies, whether conferred in the Loan Documents or at law or in equity, Lender will have all the rights and remedies of a secured party under the UCC, and any additional rights and remedies which may be provided to a secured party in any jurisdiction in which Collateral is located including, without limitation: (i) Require Debtor to assemble the Collateral and deliver it or make it available to Lender at a designated place which is reasonably convenient to both parties. (ii) Have a receiver appointed by any court of competent jurisdiction to take possession of the Collateral, the Debtor hereby consents to the appointment of such a receiver and agrees not to oppose any such appointment; if any part of the Collateral is accounts or accounts receivable Lender may notify the account debtor to make payment thereon directly to Lender and take control of any apply all cash and noncash proceeds of the foregoing, and in Lender's sole discretion apply them to payment of the Obligations upon receipt thereof.

Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is to be made. The requirements of reasonable notice will be met if such notice is mailed, postage prepaid, to the address of Debtor shown at the beginning of this security agreement at least 10 days before the time of the sale or disposition.

13. Debtor(s) agrees that any "Communications" (as defined herein) directed to Debtor by Lender, Lender's parent association, or any subsidiary, affiliate, or agent of Lender or Lender's parent association (collectively, the "Association"), may be provided in electronic form or transmitted by electronic means. As used herein, "Communications" means all notices, disclosures, documents, or other communications given by the Association to Debtor, including, without limitation, all shareholder communications and any disclosures, notices, or communications relating to this Security Agreement or any transaction between Debtor and the Association, but expressly excluding any notice required by applicable law to be provided in paper form. Debtor acknowledges that electronic Communications entail risks (including the risk of interception by a third party) and Debtor hereby releases the Association from all liability relating to the electronic provision or transmission of any and all Communications. Debtor agrees to provide Lender upon request with the e-mail address or addresses of Debtor and to notify Lender within ten (10) days if Debtor changes its e-mail address or addresses. Any Communication sent by e-mail will be deemed received when sent to the last e-mail address or addresses of Debtor known by Lender. Any Communication digitally published by the Association on an Internet website will be deemed received when the Association has both published the Communication and notified Debtor at its last e-mail address or addresses known by Lender that the Communication has been published. Transmission of this Security Agreement and any Loan Document as an "electronic record" containing Debtor's "electronic signature," as those terms are defined under applicable federal and state laws, or facsimile transmission of any Loan Document containing a facsimile of Debtor's signature, shall be as effective, enforceable and valid as if a paper version of such Loan Document were delivered containing such original written signature. The parties intend that the electronic method used as provided herein reliably establishes the identity of Lender as a holder in due course and agree that each Loan Document produced by such electronic method shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Loan Document and shall be effective as a transferable record; and to the extent, if any, that any Document constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Loan Document may be created through the transfer or possession of any counterpart or copy thereof, other than the Loan Document produced by such electronic method. Debtor agrees not to raise as a defense to the enforcement of any Loan Document that Debtor executed such Loan Document by electronic or digital means or used facsimile or other electronic means to transmit its signature on such Loan Document. At any time, Debtor may request a paper copy of any Loan Document or other record Lender made available to Debtor electronically. Debtor may revoke the consent to receive electronic Communications contained in this paragraph by sending thirty (30) days' prior written notice of such revocation, signed by Debtor, to Lender by certified mail, return receipt requested. In the event of any conflict between the terms of this paragraph and the terms of any other agreement entered into by Debtor and the Association regarding electronic signatures or communications, then as to such other agreement, the terms of such other agreement shall control as to such electronic signatures or communications.

14. Debtor shall promptly provide and/or execute and deliver to Lender such further instruments, including, but not limited to, security agreements, financing statements, continuation statements, assignments, certificates, affidavits, or resolutions in form and substance satisfactory to Lender that Lender may require to effectuate, complete, perfect, continue or preserve the security interests granted under this security agreement, and all rights and benefits including the remedies contained in or arising from any of the Loan Documents.

15. Time is of the essence in the performance of this security agreement.

16. The covenants contained in this security agreement will be deemed to be severable; in the event that any portion of this security agreement is determined to be void or unenforceable, that determination will not affect the validity of the remaining portions of the security agreement.

17. The terms of this security agreement shall bind and benefit the heirs, legal representatives, successors, and assigns of the parties; provided, however, that Debtor may not assign this security agreement, or any advances made hereunder, or assign or delegate any of its rights or obligations, without the prior written consent of Lender.

18. This security agreement shall be governed by, and construed in accordance with, the laws of the State of Nebraska, except to the extent that the law of any other jurisdiction applies as to the perfection or enforcement of Lender' security interest in or lien on any Collateral and except to the extent expressly provided to the contrary in any Loan Document.

19. This Agreement may be executed in any number of counterparts and by either party on separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

WAIVER OF JURY TRIAL. DEBTOR HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS SECURITY AGREEMENT OR ANY RELATED LOAN DOCUMENT.

THE UNDERSIGNED DEBTOR AGREES THAT DEBTOR HAS READ AND RECEIVED A COPY OF THIS SECURITY AGREEMENT.

JW Livestock LLC, A Limited Liability Company

Case 24-30690-grs Doc 171-1 Filed 07/03/24 Entered 10/28/24 08:09:40 Page 13 of 15
DocuSign Envelope ID: 4AA89EDB-E436-49FA-8BDF-0DB2689F562B
Proof of Claim    Page 13 of 15
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

By *[signature]*
Michael Jason Williams, President

*[signature]*
Michael Jason Williams

Case 24-60490-grs Claim 1-1 Filed 07/03/24 Desc Main Document Page 14 of 15
Case 24-60490-grs Doc 171-1 Filed 10/28/24 Entered 10/28/24 08:09:42 Desc
Proof of Claim    Page 14 of 15

# UCC FINANCING STATEMENT

**Name and address of filer:**

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

**2022-3226087-24.01**
Kentucky Secretary of State
File Date   8/18/2022 7:14:56 PM
Status      Active
Fee         $5.00

This document is a representation of a filing made electronically at the Kentucky Secretary of State's web site

### DEBTOR'S EXACT FULL LEGAL NAME

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| b. INDIVIDUAL'S SURNAME: Williams | FIRST PERSONAL NAME: Michael | ADDITIONAL NAME(S)/INITIAL(S): Jason | SUFFIX |
| c. MAILING ADDRESS: 5460 Slate Lick Rd | CITY: London | KY  POSTAL CODE: 40741 | COUNTRY: USA |

### DEBTOR'S EXACT FULL LEGAL NAME

| a. ORGANIZATION'S NAME: JW Livestock LLC | | | |
|---|---|---|---|
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| c. MAILING ADDRESS: 145 Shelby Brooks Ln | CITY: London | KY  POSTAL CODE: 40744 | COUNTRY: USA |

### SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)

| a. ORGANIZATION'S NAME: FARM CREDIT SERVICES OF AMERICA, PCA | | | |
|---|---|---|---|
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| c. MAILING ADDRESS: PO BOX 2409 | CITY: Omaha | NE  POSTAL CODE: 68103 | COUNTRY: USA |

4. This FINANCING STATEMENT covers the following collateral:

**Eby POSSUM BELLY PP Trailer: Livestock - Semi 4A2LD522483002374**

# Kentucky Transportation Cabinet
## Division of Motor Vehicle Licensing
### TITLE LIEN STATEMENT

TC 96-187
December 2013

| ☐ ORIGINAL FILING | ☐ CONTINUATION<br>Original File # _____<br>Original File Date _____ | ☐ TERMINATION<br>Original File # 23-0728<br>Original File Date _____ |
|---|---|---|
| 1. Debtor(s) (Last Name First) and Address<br><br>JW Livestock<br>145 Shelby Brooks Ln.<br>London, Ky. 40744 | 2. Secured Party Name and Address<br><br>Farm Credit Serv. of America.<br>P.O. Box 2049<br>Omaha, NE<br>68103. | 3. For Filing Officer (Date, Time, Number and Filing Officer)<br><br>222720630112 |

4. Vehicle information:

| YEAR MODEL | MAKE | VEHICLE IDENTIFICATION NUMBER | ADDITIONAL DESCRIPTION |
|---|---|---|---|
| 2008 | EBY | 4A2LD52748300237Y | |

NOTE:
(1) This is a multi-purpose form that can only be used once. A new form must be completed by the Secured Party upon amendment, continuation, assignment or termination. A termination statement must be signed by the secured party.

(2) In compliance with KRS 186A.190 (2), "the notation of security interests relating to property required to be titled in Kentucky through the county clerk shall be done in the office of the county clerk of the county in which the debtor resides". Additional information regarding the required county of residence can be found in subsections (a-j) of KRS 186A.190 (2).

X _____
Authentication of Debtor(s)

_____
Authentication of Secured Party(s)
(Required for filing a termination)

_____
Date

_____
Date

FILE #: 230728 FEE: $22.00
TITLE #: 222720630112
RECORDED: February 07, 2023 10:27:00 AM
TOTAL FEES: $22.00
COUNTY CLERK: TONY BROWN
DEPUTY CLERK: ASHLEY SMITH
COUNTY: LAUREL CO CLERK